STATE OF CONNECTICUT *v.* ENRIQUE MARTINEZ
(AC 30422)

DiPentima, Robinson and West, Js.

---

Argued March 17—officially released June 30, 2009

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. "It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." (Internal quotation marks omitted.) *State* v. *Peeler*, 265 Conn. 460, 470, 828 A.2d 1216 (2003), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710

(2004), quoting *Powell* v. *Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 (1932). "To be sure, [however] the right to counsel of choice is circumscribed in several important respects." (Internal quotation marks omitted.) *United States* v. *Gonzalez–Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). The sole issue in this appeal is whether the trial court abused its discretion in denying Enrique Martinez, the defendant, a continuance to secure the services of counsel of his choice in violation of his rights under the sixth amendment to the federal constitution.[1] We conclude that the court did not abuse its discretion in denying the continuance and, accordingly, affirm the judgment of the trial court.

This appeal follows a retrial of the case after our Supreme Court reversed, in part, the judgment of the trial court and remanded the case for a new trial. See *State* v. *Martinez*, 278 Conn. 598, 900 A.2d 485 (2006). In the defendant's original trial, "[t]he state charged the defendant with one count of attempted murder in violation of [General Statutes] §§ 53a-49 (a) (2) and 53a-54 (a), one count of conspiracy to commit murder in violation of [General Statutes] §§ 53a-48 (a) and 53a-54a (a), one count of assault in the first degree in violation of [General Statutes] § 53a-59 (a) (1), one count of kidnapping in the first degree in violation of [General Statutes] § 53a-92 (a) (2) (C), one count of carrying a pistol without a permit in violation of General Statutes § 29-35 (a), and one count of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). In the second part of the information, the state also charged the defendant with one count of commission of an offense while released on bond in violation of General

---

[1] The sixth amendment to the federal constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

Statutes § 53a-40b.[2] Thereafter, the case was tried to the jury, which returned a verdict of guilty on all counts except for the firearms charges, and found that the defendant had committed those offenses while out on bond in violation of § 53a-40b."[3] *State* v. *Martinez*, supra, 278 Conn. 603–604. On appeal, our Supreme Court reversed the judgment in part and remanded the case for a new trial on the charges of attempt to commit murder, assault in the first degree and kidnapping in the first degree and affirmed the judgment in all other respects. On remand, the state again charged the defendant with attempt to commit murder, assault and kidnapping. After a jury trial, the defendant was found guilty of those charges, and the court, *Hauser, J.*, imposed a total effective sentence of thirty years incarceration. This appeal followed.

On appeal, the defendant contends that the court abused its discretion in denying a continuance to allow him to secure the services of defense counsel of his choice and thus violated his rights under the federal constitution.[4] We disagree.

The following facts are relevant to our resolution of the defendant's claim. After the remand by our Supreme

[2] "After the jury returned its guilty verdict, the defendant conceded culpability on another pending charge that he had violated his probation, and the trial court then found by a preponderance of the evidence that he had violated his probation." *State* v. *Martinez*, supra, 278 Conn. 604 n.12.

[3] The underlying facts detailing the incidents that led to the defendant's arrest and conviction, which are not relevant to this appeal, were set forth thoroughly by our Supreme Court; see *State* v. *Martinez*, supra, 278 Conn. 601–604; and will not be recounted here.

[4] The defendant also claims that the court's denial violated his rights under article first, § 8, of the state constitution. The defendant, however, has provided no analysis for this claim. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 167–68, 962 A.2d 81 (2009). Accordingly, we decline to review the defendant's state constitutional claim.

Court, the court, *Fasano, J.*, held a hearing on June 30, 2006, concerning the defendant's bond. At the hearing, the defendant was represented by his appellate counsel, Robert E. Byron. Byron indicated to the court that he would not be representing the defendant in his retrial. Senior assistant state's attorney Joseph T. Corradino, appearing at the hearing, suggested to the court, in light of the state's pending motion to correct filed with the Supreme Court concerning the opinion that remanded the defendant's case for retrial and the fact that the defendant had private counsel during his original trial, that "[i]t might be appropriate to allow [the defendant] time to come up with money [to] retain counsel and . . . [therefore] put this [matter] over to the new term in September." The court, however, set the next hearing for July 20, 2006.

At the outset of the July 20, 2006 hearing, the court, *Comerford, J.*, addressed the defendant's desire to hire private counsel. The defendant informed the court that his attempts to secure private counsel had been fruitless because the attorney whose services he was seeking to retain was on vacation. The court, at the defendant's request, scheduled the next hearing for August 10, 2006, to give him enough time to arrange for representation by private counsel. At the August 10, 2006 hearing, the defendant indicated that he was unable to hire private counsel because of financial problems and requested the services of a public defender. The court, *Fasano, J.*, found that the defendant was eligible for public defender services and appointed the public defenders' office to represent the defendant. The next hearing was held on August 24, 2006, at which Jonathan Demirjian, an attorney from the public defenders' office, appeared for the defendant. Demirjian represented to the court, *Comerford, J.*, that due to the public defenders' prior

representation of some of the witnesses and victims in the case, it would need to appoint a special public defender to represent the defendant. In September, 2006, Eroll V. Skyers was appointed as special public defender to represent the defendant.[5]

Jury selection was scheduled to commence on January 29, 2007. At that hearing, however, Skyers requested a five month continuance to familiarize himself with the transcripts of the defendant's original trial and to prepare a strategy for the retrial. The court, *Hauser*, *J.*, granted a continuance until February 15, 2007, and scheduled jury selection to begin then. On February 13, 2007, Skyers filed a motion for a continuance, which was granted. The next hearing was held on March 6, 2007, at which time jury selection was to begin. At the outset of the hearing, the court heard from the defendant directly. The defendant complained about Skyers' not visiting him, inadequately discussing trial strategy with him and not obtaining for him copies of transcripts of the original trial and other documents pertinent to the retrial. In response, the court pointed out to the defendant that Skyers had been representing him in his retrial since September, 2006, and that both he and Skyers had been in court concerning the retrial on several occasions since then, the last time in January. The court continued, stating: "At that time, you asked for a continuance, and I believe Mr. Skyers joined in it and since—at that time there was no—no discussion with the court that you were seeking another attorney, that you were looking for a private lawyer to represent you. This is—you come up to the court now, [at] the moment of trial, [and] you bring it up."

The court also informed the defendant of the following. "Gary Mastronardi, [a defense attorney in private

[5] The record reveals that Skyers entered his appearance for the defendant on September 21, 2006.

practice], I think I should put on the record, contacted the court and indicated that he might be willing to enter an appearance on [the defendant's] behalf, but he needed at least sixty to ninety days [to prepare], and that's something that the court just couldn't allow. The case has been down, it was supposed to go forward previously, and there has been a good amount of time [since then]."[6] After discussing with Skyers his level of preparedness and hearing from the state, the judge concluded that "[t]o have a continuance of sixty to ninety days on the day of—on the day of trial would—would not be something that this court would countenance, given all the totality of the circumstances for this case, so based on that, I'm not going to grant a continuance. We're going to start with our jury selection this morning."[7] It is this ruling that the defendant challenges on appeal. Further facts will be set forth as necessary.

"The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will

---

[6] The state concedes, and we agree, that it is apparent from the record, including the court's subsequent inquiry and ruling on the matter, that the court treated those circumstances—the defendant's assertion of dissatisfaction with Skyers and apparent eleventh hour foray into his replacement along with Mastronardi's contact with the court—as an implicit request for a continuance by the defendant. We shall do the same on appeal because, in these circumstances, it is clear that the defendant's claim fits within the parameters of this court's holding that it will hear a claim only if it appears on the record that the question was distinctly raised at trial and was ruled on and decided by the court adversely to the appellant's claim. See *In re Candids E.*, 111 Conn. App. 210, 214 n.7, 958 A.2d 229 (2008).

[7] The court, soon after denying the request, stated to the venire panel, "[o]ur goal is to start [taking evidence in this case] on Wednesday, April 11 . . . . If we are unable to meet that date, then we will be starting April 24." The record shows that the taking of evidence commenced on April 24, 2007.

be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.* . . . After the commencement of trial, neither a right to be represented by counsel of choice nor a right to due process entitle a defendant to a continuance on demand. . . . Among the factors that may enter into the court's exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay . . . the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request . . . the timing of the request; the likelihood that the denial would substantially impair the defendant's ability to defend himself; [and] the availability of other, adequately equipped and prepared counsel to try the case . . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial. . . . In order to work a delay by a last minute [replacement] of counsel there must exist exceptional circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Ross V.*, 110 Conn. App. 1, 7–8, 953 A.2d 945, cert. denied, 289 Conn. 939, 958 A.2d 1247 (2008). Last, we emphasize that "an appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, *on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance.*" (Emphasis added.) *State* v. *Hamilton*, 228 Conn. 234, 242, 636 A.2d 760 (1994).

The defendant makes several arguments in support of his claim, many of which, however, are based on factors not on the record or presented to the court, or are claims of which the court was not aware at the time of its ruling. First, the defendant contends that "because . . . Mastronardi desired a sixty day continuance, and [the taking of evidence] was intended to start thirty-six days later . . . the difference of twenty-four days (as planned), or a mere eleven days [as actually took place], was so small" that it amounted to an abuse of discretion and, therefore, violated the defendant's sixth amendment right to counsel of his choice. We first note that the record shows that Mastronardi represented to the court that, at a minimum, he required sixty to ninety days to prepare for the defendant's trial. The defendant's representation that Mastronardi desired only a sixty day continuance is, at best, not a fact on the record or one of which the court was aware at the time it made its ruling. Therefore, we will not consider as a factor in our assessment of the reasonableness of the court's denial of the continuance that Mastronardi represented to the court that he required only a sixty day continuance. For the same reason, we also will not consider as a factor, as the defendant asserts on appeal, that Mastronardi would have agreed to split the representation of the defendant, in that he would have allowed Skyers to select the jury and that Mastronardi would have taken over the trial when the taking of evidence commenced. The record does not reflect whether any such arrangement was in existence at the time the motion was denied. Although we will not consider such factors as these, we must consider those factors that were on the record or presented to the court or of which the court was aware at the time of its ruling on the defendant's motion for a continuance.

Those factors that we must consider include the following. The defendant initially appeared before the

court for his retrial on June 30, 2006, and several more times during the ensuing months. Both the court and the state paid special attention to the defendant's purported desire to secure private representation. The state advocated for an extended continuance at that first hearing after the remand of the case to give the defendant an opportunity to hire private counsel. On July 20, 2006, the court granted a continuance to the defendant for the purpose of securing the services of counsel of his choice. Only when it became apparent to the court, on the basis of the defendant's representations to it, that he was not able to secure the services of counsel of his choice, did the court appoint a public defender in September, 2006. On December 4, 2006, the defendant appeared in court when his case was put down on the firm jury trial list. On January 29, 2007, jury selection was to commence, and the defendant was, again, before the court. The case, however, was continued because of a request from Skyers. On neither of those occasions, nor at any time prior, did the defendant express to the court any misgivings with Skyers' representation, desire for private counsel or request a continuance to seek private counsel.

On March 6, 2007, after the court had granted a second request for a continuance on February 13, 2007, and jury selection was to commence, the defendant requested to speak directly to the court. The defendant made complaints about Skyers' (1) inadequately conferring with him about the retrial on three occasions, (2) not visiting him while he was incarcerated and (3) not timely giving him copies of documents pertinent to the retrial. The defendant also stated that he "was trying to hire a lawyer at the same time, and [he] was trying to see if [he] could get a little bit more time to hire a lawyer." It was in response to this that the court stated: "Mastronardi, [a defense attorney in private practice], I think I should put on the record, contacted the court and indicated that he *might* be willing to enter an

appearance on [the defendant's] behalf, but [that] he needed *at least* sixty to ninety days [to prepare] . . . ." (Emphasis added.)

Prior to ruling, the court considered the length of time the case had been ready for retrial and questioned Skyers on his level of preparedness. Skyers assured the court that he had reviewed the transcripts of the defendant's original trial as well as other pertinent documents and had discussed with the defendant trial strategy, including the efficacy of hiring an investigator. Skyers further assured the court that he was prepared to go forward with the case that day and that he could "put up a good defense." The state also addressed the court on this matter. The state underscored that the evidence in the retrial would be virtually identical to the evidence it presented at the defendant's original trial. The only new evidence, the state reported, was the four page agreement that a co-offender, Alex Gonzalez, had entered into with the state and the resulting three page statement in which Gonzalez implicated the defendant and, by March 6, 2007, both documents had been given to the defendant. The state also told the court that Gonzalez had already been tried and convicted on the basis of the same evidence on which the defendant previously had been convicted and would be used against him in the retrial. The state, in addition, told the court that Skyers also had been given the transcripts from the Gonzalez trial. The court, on the basis of the totality of the circumstances, denied the request for a continuation.

On the record before us and on the basis of the factors presented in *State* v. *Ross V.*, supra, 110 Conn. App. 7–8, we cannot say that the court abused its discretion in denying the defendant's implicit request for a continuance. The court, in its oral decision, reflected on the facts that the defendant's request was made on the day jury selection was to begin, that the defendant had made no representations in his previous appearances that he

desired new counsel, that it was a sixty to ninety day continuance that he requested and that Skyers represented to the court that he was prepared to go forward. The court acted within its discretion in considering each of these factors. Moreover, the court need not have considered those factors not on the record or brought to its attention that the defendant now urges this court to consider. See *State* v. *Hamilton*, supra, 228 Conn. 242. Other factors that were present on the record, however, and were presented to the court, or of which the court was aware at the time of its ruling on the motion for a continuance support our conclusion that the court did not abuse its discretion in denying the request. One such factor we find compelling is Mastronardi's ultimate availability to represent the defendant. Even aside from the defendant's unfounded assertion that Mastronardi was willing to take over representation after Skyers had selected the jury, the court explicitly stated that Mastronardi represented that he *might* be willing to enter an appearance on the defendant's behalf.[8] It can hardly be suggested that this is a representation of counsel prepared and willing to take over the case. See *State* v. *Ross V.*, supra, 8. We conclude that the court did not abuse its discretion in denying the request for a continuance.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The level of Mastronardi's willingness to represent the defendant was never further explored on the record.

[9] The defendant also argues that because the court's denial of his request for a continuance violated his right to counsel of choice, it is not subject to harmless error analysis, but, rather, it is structural error subject to automatic reversal. The United States Supreme Court has held, however, that it is the "*erroneous* deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, [that] unquestionably qualifies as structural error." (Emphasis added; internal quotation marks omitted.) *United States* v. *Gonzalez–Lopez*, supra, 548 U.S. 150. Because we conclude that the court's denial of the defendant's request was a proper exercise of its discretion, it was, therefore, not erroneous and we need not address this issue.