STATE OF CONNECTICUT *v.* JOSE A. LAMEIRAO
(AC 32688)

Gruendel, Lavine and Schaller, Js.

Argued February 7—officially released May 8, 2012

*Susan M. Hankins,* special public defender, for the appellant (defendant).

*Adam E. Mattei,* special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Cornelius P. Kelly,* senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Jose A. Lameirao, appeals from the judgments of conviction,[1] rendered by the trial court pursuant to his guilty pleas of attempt to commit risk of injury to a child in violation of General Statutes §§ 53a-49 (a) (2) and 53-21 (a) (2), risk of injury to a child in violation of General Statutes § 53-21 (a) (1), illegal operation of a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a, illegal operation of a motor

---

[1] The defendant was charged in five separate informations.

vehicle while his license was under suspension in violation of General Statutes § 14-215 and his admission to two counts of violation of probation pursuant to General Statutes § 53a-32.[2] On appeal, the defendant claims that the trial court improperly denied his motion to withdraw his pleas and admissions (motion to withdraw) because, during the plea hearing, the court (1) failed to address him personally to make the determinations required by Practice Book §§ 39-19 and 39-20, and (2) misled him with its advisement that the state's recitation of the facts constituted the essential elements of the crimes charged.[3] He also claims that the court improperly found that (3) his pleas were intelligent and voluntary, and (4) his counsel's representation was not ineffective. We affirm the judgments of the trial court.

In late 2008, the defendant had charges pending against him in five cases. The state charged the defendant with risk of injury to a child and other violations in two criminal files, operating a motor vehicle while under the influence of intoxicating liquor or drugs and two counts of violation of probation arising from motor

[2] The defendant pleaded guilty to attempt to commit risk of injury to a child and risk of injury to a child pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Under an *Alford* plea, "a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 558 n.2, 941 A.2d 248 (2008).

[3] We decline to review this claim regarding the factual basis of the defendant's pleas, as he did not raise it in his motion to withdraw or at the hearing on that motion. See *State* v. *Rodriguez-Roman*, 297 Conn. 66, 95, 3 A.3d 783 (2010). The defendant's claim is not entitled to review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as it is not of constitutional magnitude. See *State* v. *Niblack*, 220 Conn. 270, 281, 596 A.2d 407 (1991) (state courts under no constitutionally imposed duty to establish factual basis for guilty plea prior to acceptance unless court put on notice of need for such inquiry).

vehicle offenses. The following facts provide the basis for each of the charges.

The Fairfield case: After his soccer game on June 1, 2008, an eleven year old boy and his mother went to a McDonald's restaurant in Fairfield. Before getting something to eat, they used the rest rooms. A surveillance camera captured the defendant following the boy into the rest room. The boy told the police that after he had washed his hands, the defendant stood in front of him and asked him several personal questions, which the boy declined to answer. The defendant held a cellular telephone in one hand and asked the boy to enter a stall and provide him with his telephone number. With his other hand, the defendant lifted the boy's soccer shirt, exposing the boy's lower abdomen and the groin area of his shorts. The boy pushed his shirt down and turned to exit the rest room. The defendant reached for the boy, told him not to leave and followed him out of the rest room. The boy was frightened and told his mother about the incident. The next day, the boy's mother reported the incident to the police. The boy gave the police a sworn statement, noting that the defendant had a u-shaped scar under one of his eyes. One day later, the boy identified the defendant, who has a scar under one of his eyes, in a photographic array. The defendant was arrested and charged with risk of injury to a child in violation of § 53-21, sexual assault in the fourth degree in violation of General Statutes § 53a-73a and breach of the peace in the second degree in violation of General Statutes § 53a-181.

The motor vehicle cases: On October 10, 2008, the defendant was sentenced in the geographical area number twenty-three court in the judicial district of New Haven in two cases stemming from charges of operating a motor vehicle while under the influence of intoxicating liquor or drugs. In both cases, the defendant was

sentenced to probation. One of the conditions of probation prohibited the defendant from operating a motor vehicle while his privilege to drive was under suspension and another forbade the defendant from driving until his license was restored. These files were later transferred to the judicial district of Fairfield at Bridgeport.

On November 11, 2008, after being notified of a motor vehicle accident, a Bridgeport police officer stopped a motor vehicle with heavy front end damage. The defendant was operating the vehicle, and the officer saw a bottle of rum in plain view. The defendant emitted an odor of alcohol and was unable to perform any field sobriety tests. He was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs. On the basis of the defendant's November 11, 2008 motor vehicle arrest, an arrest warrant for violation of probation was issued against him.

The Bridgeport case: On November 25, 2008, at approximately 7:30 p.m., the defendant was operating a truck in Bridgeport when he stopped adjacent to a teenage boy who was riding a bicycle. The defendant asked the teen if he wanted to smoke and drink. He then opened the door of the truck and grabbed the teen's jacket. The teen pushed the defendant's hand away, memorized a portion of the truck's license plate and called 911. The police found a truck fitting the description given by the teen at a hotel in Milford. The police took the teen to the hotel where he identified the defendant. The defendant was arrested and charged with attempt to commit kidnapping in the second degree in violation of General Statutes § 53a-94 and risk of injury to a child in violation of § 53-21 (a) (1).

Initially, the defendant was represented by counsel afforded him by his union membership, but he dismissed that counsel, who had advised him to accept a

plea offer. After dismissing prior counsel, the defendant retained attorney Richard P. Silverstein to represent him in all five cases. After at least one continuance, the Bridgeport case came before the court, *Thim, J.,* for pretrial discussions. The defendant himself filed a motion for disclosure of the 911 tapes. The state represented that it wanted to try the Fairfield and Bridgeport cases together. Silverstein opposed joinder of the criminal cases. The court stated that discussion of joinder was premature and removed the Bridgeport case from the trial list.

On January 25, 2010, the Bridgeport case came before the court, *Devlin, J.,* for trial. Judge Devlin asked the parties whether settlement negotiations had been exhausted. Silverstein represented that there had been several pretrials and that he was still discussing the matter with the defendant. He also represented that the state had disclosed the 911 tapes, which he would discuss with the defendant, and "that might cause [the defendant] to rethink [his] position." The defendant told the court, "I'm not pleading to something . . . ." The court advised the defendant that the decision to plead guilty was his, but that he should consider the matter carefully. The court then asked which of the criminal cases would be tried first. The state repeated its intention to try the criminal cases together. The court stated that jury selection would start "on Wednesday" and advised the state to file a motion for joinder.

The parties appeared before Judge Devlin to begin jury selection on January 27, 2010. Before voir dire commenced, the defendant decided to change his plea. The parties then appeared before Judge Thim, and the defendant pleaded guilty to one count of attempt to commit risk of injury to a child in violation of §§ 53a-49 (a) (2) and 53-21 (a) (2) in the Fairfield case, one count of risk of injury to a child pursuant to § 53-21 (a)

(1) in the Bridgeport case,[4] one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a and one count of illegal operation of a motor vehicle while his license was under suspension in violation of § 14-215. The defendant also admitted to two counts of violation of probation in violation of § 53a-32. After the defendant pleaded, Judge Thim directed certain questions to him.

The court asked the defendant his age, how much education he had received, and whether he had taken any drugs, medication or alcohol that would affect his ability to understand what was taking place in court that day. The defendant told the court that he was forty-six years old, had gone to Central High School and was taking medication for depression, but that he did not think the medication affected his ability to understand the proceedings. The defendant responded, "yes," when the court asked him if he was satisfied with the advice his attorney had given him and if his attorney had done all he could for him. The defendant also told the court that he understood that by pleading guilty he was giving up certain constitutional rights, which the court had enumerated. Thereafter, the following colloquy took place:

"The Court: Has anyone forced you in any way to give up those rights, sir?

"The Defendant: No.

"The Court: Now, with respect to the risk of injury charges, has your attorney . . . explained to you just what it is the state must prove to show that you are guilty of those charges?

"The Defendant: No.

"The Court: Okay.

---

[4] See footnote 2 of this opinion.

"(Whereupon discussion was held off the record between defense counsel and the defendant.)

"The Defendant: Oh, okay. Yeah. Yeah.

"The Court: Well, let me ask the question again. Maybe you did or did not understand it. First . . . you are charged with risk of injury in violation of § 53-21 (a), subpart one, and in the other case, subpart two of the General Statutes. . . . Has Mr. Silverstein explained to you just what it is the state must prove to show that you are guilty of those charges?

"The Defendant: Yes.

"The Court: Mr. Silverstein, have you explained the . . . .

"Attorney Silverstein: I did. We went over the elements of the crime and that the state needed to prove those elements beyond a reasonable doubt.

"The Court: Okay. And the violation of subpart one is a class C felony with the possible maximum penalty being ten years, and the violation of subpart two is a B felony with the maximum penalty being twenty years. So, that on those two cases you could be, without a plea agreement, sentenced to ten years on one and, on top of that, twenty years on the other. So, you could be, theoretically, sentenced up to thirty years on those two cases. Do you understand that, sir?

"The Defendant: Yes."

In response to the court's inquiry, Silverstein informed the court that the defendant owed 363 days on the two violation of probation charges. The prosecutor stated to the court that operating a motor vehicle under suspension required a mandatory minimum sentence of thirty days and a mandatory minimum sentence of 120 days for driving under the influence. The court asked Silverstein if he had spent time with the defendant

explaining those penalties. Silverstein explained that he had and that the defendant understood. The court then addressed the defendant again:

"The Court: . . . One thing before [the prosecutor] speaks. . . . [Y]our attorney has told me you're pleading guilty under the *Alford* doctrine.[5] What that means, that doctrine, it allows a judge to take a guilty plea even though the defendant does not admit every factual claim of the state. It basically means that you have gone over the law and the evidence with your attorney and that you have concluded that there's a substantial likelihood that should you proceed with trial you will be found guilty of the charge. Therefore, you are submitting to a guilty finding and taking advantage of plea bargaining. Is that basically what you are doing with the two risk of injury charges?

"The Defendant: Yes.

"The Court: Okay. Let's listen carefully to [the prosecutor]."

The prosecutor then set forth the facts of the Fairfield case after which the following colloquy occurred:

"The Court: . . . [J]ust to keep them separate for a moment, Mr. Lameirao, I understand you're pleading guilty under the *Alford* doctrine, but you just heard [the prosecutor] recite the facts on a case. Do you wish to comment, add anything, or correct anything or just remain silent?

"The Defendant: Remain silent.

"The Court: Okay. [Prosecutor]."

The prosecutor then set forth the factual basis of the Bridgeport case after which the following colloquy occurred:

---

[5] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); see also footnote 2 of this opinion.

"The Court: Mr. Lameirao, once again I ask you, do you wish to comment, correct, or add anything to what [the prosecutor] . . .

"Attorney Silverstein: Yeah, on his behalf, Your Honor, [the defendant] adamantly denies having any physical contact with this individual, nor indicated that he made any attempt to grab him. And I believe, pursuant to the plea agreement, the state has elected not to go forth on the kidnapping second charge and charged with a risk of injury to a [child].

"The Court: Other than Mr. Silverstein's comments, is there anything you want to add, sir?

"The Defendant: No, I agree what he said that I . . .

"Attorney Silverstein: That's it."

After listening to the recitation of facts relating to the violation of probation on the motor vehicle charges, the defendant admitted to driving when his operator's license was under suspension and that he also drove while he was intoxicated. The following colloquy then occurred:

"The Court: Okay. Now, a few other things I want to go over with you before we get to the plea agreement. First of all, if I accept your pleas of guilty to the risk of injury and . . . enter a finding of guilty, when you get out of prison, you will be required to register with the commissioner of public safety as a sex offender. Do you understand that, sir?

"The Defendant: For how long?

"The Court: Oh, well, that's up to when I impose the sentence . . .

"The Defendant: Oh.

"The Court: I'll decide that. Somewhere between ten to thirty years. I'll listen to your lawyer argue . . . that point in time.

"The Defendant: Okay.

"The Court: Do you understand that, sir?

"The Defendant: Yes."[6]

The prosecutor then informed the court of the plea agreement: a twenty year sentence, execution suspended after ten years, followed by a period of probation somewhere between ten to thirty-five years and ten years as a registered sex offender. The defendant informed the court that the prosecutor's recitation was consistent with his understanding of the plea agreement. The court informed the defendant that as long as the state honors the plea agreement, he will not be permitted to withdraw his pleas. The defendant stated that he understood. The court told the defendant that the plea agreement was what the total effective sentence would be. The matter was continued for a presentencing investigation report.[7]

The defendant and a probation officer met via teleconference, which was videotaped, and the defendant signed a release for the presentence investigation report. Although the matter was scheduled for sentencing on April 1, 2010, Judge Thim continued sentencing until April 23, 2010, because Silverstein had informed

[6] The court also discussed the immigration consequences of a guilty plea if the defendant were not a citizen of the United States. That is not an issue here.

[7] The court file contains a form entitled "Request for Continuance of a Pre-Sentence Investigation," which was addressed to Judge Thim by a probation officer. The form states in part: "On 1/27/10, [the defendant] appeared in Bridgeport Superior Court before [Y]our Honor. At that time a Pre-Sentence Investigation Report was ordered to be completed for sentencing presently schedule for 3/19/10. At this time, I am requesting a continuance to 4/1/10 so that the report may be completed." Judge Thim signed the form on February 16, 2010.

him that the defendant wanted to withdraw his pleas. On April 23, 2010, the court stated that it was in possession of two letters from the defendant that were addressed to the clerk of the court and a motion to withdraw as counsel filed by Silverstein. When asked to explain the basis of his motion to withdraw, Silverstein stated that the defendant had filed a grievance against him, which, according to Silverstein, contained "pretty harsh allegations . . . ." Under the circumstances, Silverstein did not think that, in good conscience, he could represent the defendant.[8]

The court asked the defendant to explain the basis of his motion to withdraw. The defendant stated that Silverstein "lied to me, was dishonest when I spoke to him upstairs in the courtroom. What happened when I came down before you was not what he told me upstairs. What he told me upstairs is a complete lie. He's been lying to me since I hired him." The court noted that Practice Book § 39-27 permits a defendant to withdraw a plea if the plea is the result of ineffective assistance of counsel.

On July 7, 2010, Joseph G. Bruckmann, a public defender, filed an amended motion to withdraw the defendant's guilty pleas and admissions.[9] The defendant

---

[8] The court granted Silverstein's motion to withdraw as counsel on April 27, 2010.

[9] The amended motion, filed pursuant to Practice Book §§ 39-26 and 39-27, asserted, in part, that at the time the defendant pleaded, "the court did not determine, by addressing the defendant personally in open court, that the plea[s] [were] voluntary and [were] not the result of force or threats or of promises apart from the plea agreement, which was a prerequisite to acceptance of the pleas and admissions. Practice Book § 39-20. . . . [T]he court did not accept the defendant's pleas and admissions, and, as a result, the defendant has a right to withdraw those pleas and admissions. Practice Book § 39-26. . . . The defendant's pleas were entered without knowledge of the nature of the charge or without knowledge that the sentence to be imposed could be imposed. . . . The defendant's pleas resulted from the denial of effective assistance of counsel." (Internal quotation marks omitted.)

appeared before Judge Thim on July 8, 2010, when Bruckmann argued that the court was required to permit the defendant to withdraw his pleas because the court never explicitly accepted his pleas[10] as required by Practice Book § 39-26. The court rejected the argument, stating that it had reviewed the transcript of the plea hearing and found that it implicitly had accepted the defendant's pleas.[11]

The court also heard testimony from the defendant and Silverstein. The defendant testified that Silverstein met with him only twice, never returned his telephone calls, never discussed potential defenses nor provided him with documents, witness statements or police reports. The defendant said that he never saw the surveillance video and claimed that Silverstein told him that there was no 911 tape. The defendant stated that after he listened to the 911 tape on January 27, 2010, Silverstein threatened him, saying that "if [he] didn't plead guilty, [Silverstein] was gonna make [him] regret it." According to the defendant, Silverstein never explained what the state had to prove to convict him and told him that he was pleading guilty to "two risks, subsection one." Silverstein allegedly told the defendant that the plea agreement was "ten, suspended after five, ten years probation and ten on registration." The defendant stated that it was only after he read the transcripts that he realized that the state surreptitiously had "added subsection two" to the risk of injury to a child charge because it required sex offender registration.

---

[10] During his argument, Bruckmann acknowledged that one could find that the court implicitly had accepted the defendant's pleas.

[11] The court ruled, stating: "The court implicitly accepted the plea, and at the time the defendant was advised that as long as the agreement is honored, he would not be able to withdraw his pleas. The defendant acknowledged that he understood that rule. And with respect to the acceptance of the plea and the court having implicitly accepted the plea, I found a federal case on point, *United States* v. *Morales-Sosa*, 191 F.3d 586 (5th Cir. 1999)."

The defendant claimed that Silverstein told him that he needed to hire a private investigator but that no investigator was hired. On cross-examination, the defendant admitted that he pleaded guilty on prior occasions and admitted that, during the plea canvass, he told the court that no one had forced him to plead guilty. He also admitted that he understood the plea agreement to be "twenty after ten followed by probation . . . ." The defendant, however, claimed that the transcript was incomplete.

Silverstein testified that he has represented criminal defendants for twenty-five years and has tried approximately 200 cases. When he became involved in the defendant's case, he knew that the defendant was perceived as difficult by his union. The union asked Silverstein to represent the defendant in the Fairfield case. When the defendant was charged in the Bridgeport case, a class B felony for which the union did not provide counsel, the defendant asked Silverstein to take his case privately. Silverstein explained to the defendant that his representation would be expensive; the defendant signed a fee agreement and gave Silverstein power of attorney to access his bank account. In discussions with the defendant, Silverstein spent a great deal of time explaining to the defendant why a plea bargain would be in his best interest, given the charges. He explained all of the charges, their elements and possible sentences, as well as the terms of the plea bargain offer.

Following the presentation of evidence, Bruckmann argued that the defendant's motion to withdraw the pleas should be granted because the court did not accept the pleas and the defendant did not understand the nature of the charges against him, what the state was required to prove and the terms of the plea agreement. Bruckmann stated that the defendant may have construed Silverstein's telling him that he, the defendant, would regret it if he did not accept the plea offer as

Silverstein's telling him that he, Silverstein, would make him regret not taking the offer. Bruckmann argued that the defendant misunderstood Silverstein's statement, which affected the voluntariness of the defendant's accepting the plea offer. Bruckmann also argued that Silverstein failed to help the defendant understand why hiring an investigator would not help his case, but he agreed with Silverstein's position that an investigator would not have been beneficial to the defendant.

During his argument, the prosecutor referred to the transcript of the plea hearing and noted the defendant's responses to the court's questions. He also noted that, after he had recited the facts underlying the Bridgeport case, Silverstein spoke up on behalf of the defendant, stating that the defendant "adamantly denies having any physical contact" with the teen and that the state elected "not to go forward with the kidnapping charge." The prosecutor further argued that the issues would be settled on the basis of the court's credibility determinations and that the defendant had failed to demonstrate the ineffective assistance of counsel.

In issuing its ruling, the court made the following factual findings. The defendant and Silverstein appeared in court fourteen times before the case was assigned to Judge Devlin for trial on January 15, 2010. Moreover, Judge Thim found, "[e]arlier, on March 27, 2009, I conducted a pretrial conference with counsel, and the state was asking for a substantial period of incarceration, as was earlier explained today by . . . Silverstein. I told counsel . . . for the state and the defendant that if the defendant pled guilty to the charges, I would impose a sentence of twenty years, suspended after ten years, require [sex offender] registration for ten years and a probationary term somewhere between ten to thirty-five years. I find that this plea offer was communicated by counsel to the defendant before the trial assignment date of January 25,

[2010].'' The court then addressed the four claims the defendant had raised in this motion to withdraw his pleas and admissions.

As to the claim that the court did not accept the defendant's pleas, the court found that it implicitly had accepted the pleas. The court informed the defendant that he would not be permitted to withdraw his pleas as long as the state honored the plea agreement. The defendant stated that he understood the court's advisement. On the basis of the court's review of the transcript and the relevant sections of the rules of practice, it determined that on January 27, 2010, the defendant's pleas were voluntary and not the result of force, threats or promises apart from the plea agreement. The court found Silverstein's testimony to be credible and that Silverstein advised the defendant of the benefit of the plea agreement and did not coerce the defendant into accepting the plea agreement.

The issues concerning the defendant's knowledge of the nature of the crimes with which he was charged, the sentences that could be imposed and the effectiveness of counsel turn on the court's credibility assessment. The court found Silverstein to be credible and that the defendant knew the nature of the charges and their possible sentencing consequences. The defendant also knew and understood the plea agreement set forth in the record of January 27, 2010. Moreover, the court found that the defendant failed to show that he was denied the effective assistance of counsel. The court also found that, under the facts of this case, Silverstein's investigation was adequate and the defendant failed to meet his burden to show that but for the alleged lack of investigation, he would not have pleaded guilty or the result would have been different. The court denied the defendant's motion to withdraw his guilty pleas.

Judge Thim sentenced the defendant in accordance with the plea agreement on July 30, 2010. The defendant appealed.

I

The defendant claims that the court deprived him of his federal and state constitutional rights to due process and a fair trial by denying his motion to withdraw his pleas.[12] Under that broad claim, the defendant claims that the court failed (1) to address him personally to make the requisite determinations under Practice Book §§ 39-19 and 39-20, and (2) to accept his pleas as required by the rules of practice. We disagree.

Practice Book § 39-26 provides in relevant part: "A defendant may withdraw his . . . plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his . . . plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his . . . plea after the conclusion of the proceeding at which the sentence was imposed."

"[O]ur standard of review is abuse of discretion for decisions on motions to withdraw guilty pleas brought under Practice Book § 39-27."[13] *State* v. *Scales*, 82 Conn. App. 126, 129, 842 A.2d 1158, cert. denied, 269 Conn. 902,

---

[12] The defendant failed to provide an analysis of his state constitutional claim. We therefore decline to afford it review. See *State* v. *Martinez*, 115 Conn. App. 426, 429 n.4, 973 A.2d 120, cert. denied, 293 Conn. 914, 978 A.2d 1113 (2009).

[13] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his . . . plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

851 A.2d 305 (2004). "Practice Book § [39-27] specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered. [O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . . The burden is always on the defendant to show a plausible reason for withdrawal of a plea of guilty." (Internal quotation marks omitted.) *State* v. *Morales*, 121 Conn. App. 767, 773–74, 996 A.2d 1206, cert. denied, 298 Conn. 909, 4 A.3d 835 (2010).

"In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 59, 84, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001).

A

The defendant's first claim is that the court improperly failed to grant his motion to withdraw his pleas because the court failed to address him personally to make the findings required under Practice Book §§ 39-19 and 39-20.[14] Namely, the defendant claims that the court never addressed him personally to determine whether he fully understood the nature of the charges to which the plea agreement was offered and never

[14] Practice Book § 39-20 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

addressed him personally in open court to determine that the pleas were voluntary and not the result of force, threats or promises apart from the plea agreement. We disagree because the record of the court's plea canvass, as set forth in detail in this opinion, does not support the defendant's claims.

The defendant told Judge Thim that no one had threatened him or forced him to give up his rights. Although he initially responded, "no," to the court's inquiry as to whether Silverstein had explained to him what the state must prove, after speaking to Silverstein briefly, the defendant stated to the court, "[o]h, okay. Yeah. Yeah." Given the defendant's different responses, the court asked the defendant, "[w]ell, let me ask the question again. Maybe you did or did not understand it. First . . . you are charged with risk of injury in violation of § 53-21 (a), subpart one, and in the other case, subpart two, of the General Statutes. . . . Has Mr. Silverstein explained to you just what it is the state must prove to show that you are guilty of those charges?" The defendant stated, "[y]es."

Moreover, the court also asked the defendant, "And the violation of subpart one is a class C felony with the possible maximum penalty being ten years, and the violation of subpart two is a B felony with the maximum penalty being twenty years. So, that on those two cases, you could be, without a plea agreement, sentenced to ten years on one and, on top of that, twenty years on the other. So, you could be, theoretically, sentenced up to thirty years on those two cases. Do you understand that, sir?" The defendant stated: "[y]es." After the prosecutor stated on the record the facts underlying the criminal cases, the court asked the defendant if he wanted to comment, add anything, correct anything or remain silent. With regard to the facts underlying the Fairfield case, the defendant elected to remain silent. As to the underlying facts of the Bridgeport case, Silverstein

spoke on the defendant's behalf, stating that the defendant denied ever touching the teen.

Given the record of the plea canvass, the defendant's claim that the court did not personally address him with regard to whether his pleas were voluntary and whether he understood the nature of the charges and what the state was required to prove is confounding. The defendant cannot prevail on this claim.

B

The defendant claims that his motion to withdraw his pleas should have been granted as a matter of right because the court did not explicitly accept his pleas. We do not agree.

The defendant takes issue with the court's finding that it implicitly accepted his guilty pleas on January 27, 2010. He contends that the language, "acceptance," as used in Practice Book § 39-26, means *explicit* acceptance by the court. Moreover, he argues that acceptance is not a mere formality or technicality, but a matter of substance affecting the defendant's statutory and constitutional rights to maintain his pleas of not guilty, unless and until the court has satisfied the mandates of the rules of practice. The defendant, however, does not cite any law to support his position that the court's acceptance of a plea must be explicit.

The defendant's claim requires us to construe the rule of practice. "The rules of statutory construction apply with equal force to Practice Book rules." (Internal quotation marks omitted.) *Pitchell* v. *Hartford*, 247 Conn. 422, 432, 722 A.2d 797 (1999). "It is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding

them." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673 (2006).

Section 39-26 of the rules of practice provides, in relevant part: "A defendant may withdraw his . . . plea of guilty . . . as a matter or right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his . . . plea upon proof of one of the grounds in Section 39-27. . . ." We note that there are no words in the rule that qualify the nature of the acceptance of a guilty plea. The rule contains neither the word implicitly nor explicitly. "Connecticut courts have refused to attach talismanic significance to the presence or absence of particular words or phrases"; (internal quotation marks omitted) *State* v. *Wright*, 114 Conn. App. 448, 470 n.1, 969 A.2d 827 (2009) (*DiPentima, J.*, concurring); in different contexts.[15] Moreover, "the trial court is presumed to have applied the law correctly, and it is the burden of the applicant to show to the contrary." (Internal quotation marks omitted.) *Blumenthal* v. *Kimberly Mfg., Inc.*, 265 Conn. 1, 9, 826 A.2d 1088 (2003). Our thorough review of the record demonstrates that the defendant has failed to meet his burden.

The defendant appeared before Judge Thim on January 27, 2010, after he had appeared before Judge Devlin

[15] "See, e.g., *State* v. *Robinson*, 227 Conn. 711, 731, 631 A.2d 288 (1993) (failure to use talismanic words does not indicate failure to make necessary determination); *State* v. *Onofrio*, 179 Conn. 23, 45, 425 A.2d 560 (1979) ([t]here is no talismanic ritual of words that must be spoken by a dying declarant to render statements admissible); *State* v. *Peters*, 89 Conn. App. 141, 146, 872 A.2d 532 (the fact that the court did not use the specific words psychiatric disabilities does not warrant reversal under the plain error doctrine), cert. denied, 274 Conn. 918, 879 A.2d 895 (2005); *State* v. *Peters*, 40 Conn. App. 805, 823, 673 A.2d 1158 (jury charge not improper for failure to recite talismanic words), cert. denied, 237 Conn. 925, 677 A.2d 949 (1996)." (Internal quotation marks omitted.) *State* v. *Wright*, supra, 114 Conn. App. 470 n.1 (*DiPentima, J.*, concurring).

to start picking a jury. The defendant, after seeing or listening to the 911 tape, apparently decided that accepting the state's plea offer was a better course of action than allowing a jury to decide his fate. Judge Thim canvassed the defendant, who represented that he wanted to change his plea. The defendant had met with Silverstein, who explained the charges against him, what the state had to prove to convict him, the potential sentences if convicted and the terms of the plea agreement. The defendant indicated that he was satisfied with Silverstein's representation and that he was not threatened or otherwise coerced into accepting the plea agreement. The defendant acknowledged that he was giving up certain of his constitutional rights in exchange for a plea bargain. The court explained the *Alford* doctrine to the plaintiff. The defendant heard the prosecutor state the facts underlying the charges and stood silent with regard to the facts of the Fairfield case. As to the facts of the Bridgeport case, Silverstein spoke on the defendant's behalf adamantly denying that the defendant touched the teen. After the prosecutor placed the plea agreement on the record, the following colloquy took place:

"The Court: Okay. Plea agreement, twenty years, suspended after ten years, followed by probation. Is that what you understand the agreement to be, sir?

"The Defendant: Yes. . . .

"The Court: Okay. Okay. We will . . . and that's the total effective sentence. *Now, that's what it will be.* Now, we will continue the case for a presentence report." (Emphasis added.) The court then scheduled sentencing for March 19, 2010.

On the basis of this record, we are constrained to conclude that the court implicitly accepted the defendant's plea. After the defendant stated that he understood the plea agreement to be twenty years, suspended

after ten, the court stated "[n]ow, that's what it will be." The court then continued the matter and requested a presentence investigation report. There would be no reason to order a presentence report or to schedule sentencing if the court had not accepted the defendant's pleas and admissions. The record also demonstrates that the defendant communicated with a probation officer to complete the presentence report and signed a release for the report. The defendant's behavior is consistent with his understanding that the court had accepted his *Alford* pleas and admissions. Compare *State* v. *Pena*, 16 Conn. App. 518, 531–34, 548 A.2d 445, cert. denied, 209 Conn. 830, 552 A.2d 1217 (1988).

The defendant takes exception to the federal case on which the court relied for the propriety of accepting a plea implicitly. Although we disagree with the defendant's claim that *United States* v. *Morales-Sosa*, 191 F.3d 586 (5th Cir. 1999),[16] does not support Judge Thim's ruling, we need not rely on federal law to support our conclusion that an implicit finding is proper. In *State* v. *Pena*, supra, 16 Conn. App. 531–34, the transcript of the proceeding at which Francisco Pena pleaded guilty pursuant to the *Alford* doctrine did not contain a record of the court's having accepted his guilty pleas. Id., 523.

---

[16] In *Morales-Sosa*, the United States Court of Appeals for the Fifth Circuit concluded that the District Court implicitly had accepted a guilty plea even though it had failed to state explicitly that it was doing so. The Court of Appeals noted that if the plea had been rejected, pursuant to rule 11 (e) (4) of the Federal Rules of Criminal Procedure, the District Court was required to inform the parties that it was rejecting the agreement and to inform the defendant, Miguel Morales-Sosa, personally, that it was not bound by the agreement. The Court of Appeals was persuaded that the District Court implicitly had accepted the plea agreement, given that the District Court did not follow the procedures of rule 11 (e) (4), and Morales-Sosa received the benefit of the plea agreement in the dismissal of the original indictment and a downward departure from the applicable sentencing guidelines. The Court of Appeals concluded that Morales-Sosa's substantial rights were not affected by the District Court's failure explicitly to accept the plea agreement. *United States* v. *Morales-Sosa*, supra, 191 F.3d 588.

On appeal, this court stated, "[o]ur review of the entire record leaves us with no doubt that a finding of guilty was manifest in the trial court's actions. Despite the absence of the specific words 'I find the defendant guilty' in the transcripts, the trial court's unchallenged signature attesting to a finding of guilty is clear evidence of the court's conclusion as to the defendant's guilt." Id., 533. Moreover, as in this case, the trial court continued the matter for preparation of a presentence investigation report. Id., 534.

As in *Pena*, the trial court here found that "a finding of guilty was implicit in the trial court's actions." We agree and conclude that the court's actions and the defendant's participating in the preparation of a presentence investigation report demonstrate implicitly that the court accepted the defendant's guilty pleas and admissions, and that the defendant acknowledged the acceptance. Moreover, the record discloses no facts to indicate that the court had not accepted the defendant's pleas and admissions. For example, the record is devoid of evidence that the court rejected the plea agreement or that the parties were ordered to return to Judge Devlin to pick a jury. We therefore conclude that the court did not abuse its discretion by denying the defendant's motion to withdraw his pleas and admissions.

II

The defendant claims that his pleas and admissions were not knowing, intelligent and voluntary due to the ineffective assistance of counsel. We disagree.

"[A] claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than a direct appeal. . . . Section 39-27 of the Practice Book, however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea. A defendant must satisfy two requirements . . . to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel.

. . . First, he must prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law. . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance." (Internal quotation marks omitted.) *State* v. *Morales*, supra, 121 Conn. App. 774; see also *Hill* v. *Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a [claim of ineffective assistance of counsel]. See *Strickland* v. *Washington*, supra, [466 U.S.] 687." *Faraday* v. *Commissioner of Correction*, 107 Conn. App. 769, 773–74, 946 A.2d 891 (2008). "[I]t is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) Id., 774.

In ruling on the defendant's motion to withdraw his pleas, the court stated: "I conclude that the defendant failed to show that he was denied the effective assistance of counsel. Among his claims is the argument that . . . Silverstein did not adequately investigate the background of the complainants and the strength of the state's case. I find that under the facts of this case, the investigation was adequate. . . . [I]n making that finding, I find . . . Silverstein's explanation to be credible. The defendant has, moreover, failed to meet his burden of showing that but for the claimed lack of investigative work, he would not have pleaded guilty or that there would have been a different result."[17]

---

[17] During direct examination by the prosecutor, Silverstein testified, in part, with regard to the Fairfield case and the violation of probation cases as follows:

On the basis of our review of the record, we conclude that the court properly denied the defendant's motion to withdraw his pleas due to the ineffective assistance of counsel. The defendant claims that Silverstein failed to conduct an adequate investigation, but he has not demonstrated what information an "adequate" investigation would have produced. The defendant wanted to see the transcript of or hear the 911 tapes. Silverstein provided the defendant with the tapes at the time the Bridgeport case was called for jury selection. The defendant has not explained how the interrelationship between Silverstein's representation and the guilty pleas caused the pleas not to be voluntary and intelli-

"Attorney Silverstein: I was really close to working [the Fairfield case and the violation of probation cases] for no jail, because . . . I detected a reluctance on [the part of the young prosecutor] to go forward and also a reluctance on the part of the complainant in that case to testify. There was some discussions with . . . his mother about he really would prefer not to come into court and be subjected to cross-examination. But before that occurred, obviously, [the defendant] picked up this kidnapping and risk of injury case, [and the files were transferred to part A and a more experienced prosecutor]."

With regard to his investigation of the Bridgeport case, Silverstein testified as follows:

"Attorney Silverstein: But in regard to the private investigator, based on information I had, a private investigator . . . I didn't think it was necessary. . . . [I]t was a waste of money. I mean, I heard the two things [the defendant] wanted to investigate; one, the color of his car. I mean, that's a given. The car was impounded. It was described as blue by the [teen]; it was black, or it was brown; it was green . . . . [T]here was a 911 call when [the teen] gave five out of the six numbers on the license place and described the truck other than the color, which was a shade off. That's going nowhere.

"It was my recollection that [the defendant] gave an oral statement to the police in regard to his whereabouts that evening. So, it's not as if I'm gonna get anywhere with a private investigator to prove that the car was somewhere else. That was a nonissue.

"In regard to the minor himself; investigate the minor, that's nothing, you know. [A]n investigator, what's he gonna do? I mean, he can't get into the juvenile records, all right. I could probably have access to those. Should [the prosecutor] call him, I would have made that request. As far as . . . veracity and truthfulness in bringing in people to impeach a fourteen year old who makes a phone call almost spontaneous to the event . . . you're not gonna get anywhere with that."

gent. Moreover, the defendant has not produced facts that Silverstein would have discovered if his investigation had been different and how those facts would have affected the knowing and voluntary nature of the guilty pleas.

The judgments are affirmed.

In this opinion the other judges concurred.