******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LESLIE RUSSELL *v.* COMMISSIONER
OF CORRECTION
(AC 34551)

Lavine, Bear and West, Js.*

*Argued January 16—officially released May 6, 2014*

(Appeal from Superior Court, judicial district of
Tolland, T. Santos, J.)

*Gwendolyn S. Bishop*, assigned counsel, for the
appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with
whom, on the brief, were *Stephen J. Sedensky III*, state's
attorney, and *Warren Murray*, supervisory assistant
state's attorney, for the appellee (respondent).

*Opinion*

WEST, J. The petitioner, Leslie Russell, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. In this appeal, the petitioner claims that the court improperly denied his claim of ineffective assistance of counsel on the basis of his trial counsel's failure to object to the victim's lay testimony on an ultimate issue in the case. The petitioner specifically argues that his trial counsel rendered ineffective assistance by not objecting to the victim's testimony identifying the petitioner as the individual depicted in a surveillance videotape that was recorded inside the victim's home. We are not persuaded, and therefore, affirm the judgment of the habeas court.

The following facts and procedural history, as set forth in the petitioner's direct appeal; *State* v. *Russell*, 101 Conn. App. 298, 302, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007); are relevant to our review of this claim. "The [petitioner] and the victim . . . met some time in 2001 and dated on again, off again until January, 2003, when the victim finally broke off the relationship." Id.

In 2003, the victim experienced two incidents involving the petitioner, which led the victim to believe that the petitioner had access to information regarding her schedule. Consequently, "she purchased a 'spy camera' disguised as a flower pot, which she installed on top of her refrigerator. . . . The camera faced a clock and the victim's wall calendar, on which she recorded many of her and her children's planned appointments and events. On the evening of Friday, January 9, 2004, the victim went out to dinner with some friends. Her children were with their father, as was usual on Fridays, a fact of which the [petitioner] was aware.

"When the victim returned home at about 11 p.m., she played the videotaped footage that her camera had recorded while she was out. The tape showed that between 10 and 10:40 p.m., an individual, whom the victim recognized as the [petitioner], had moved throughout the kitchen and, apparently, elsewhere within the house. . . . While in the kitchen, the individual repeatedly looked through the victim's calendar, and he removed her telephone from the wall and accessed information in its caller identification unit. He opened a set of louvered doors behind which the victim kept a bag containing discarded mail for recycling. The individual looked through the bag, removed some of the papers from within and tucked them into his waistband near the small of his back. Although $106 in cash was secured to the front of the victim's refrigerator, the individual did not take it. . . . When the police arrived . . . [n]o intruder was found, and there were no signs of forced entry.

"On the basis of information supplied by the victim,

a search warrant was obtained for the [petitioner's] vehicle and residence. Upon executing that warrant, the police seized several flashlights, a black knit cap and a gray hooded sweat jacket with rubber gloves in the pocket that was hanging on the [petitioner's] bedpost. . . . When asked by police whether he had a key to the victim's house, the [petitioner] immediately retrieved from a ring a key that matched a key the victim had provided.

"Thereafter, the [petitioner] was charged with one count of stalking in the third degree, one count of criminal violation of a protective order and one count of burglary in the second degree." (Footnotes omitted.) Id., 305–307. The matter was consolidated for trial with another incident involving the petitioner and the victim that resulted in charges of one count of violating a protective order and one count of stalking in the third degree. A jury found the petitioner guilty of two counts of violating a protective order in violation of General Statutes § 53a-223, two counts of stalking in the third degree in violation of General Statutes § 53a-181e (a), and one count of burglary in the second degree in violation of General Statutes § 53a-102 (a) (1). On direct appeal, this court reversed the petitioner's conviction of burglary in the second degree and one count of stalking in the third degree, and remanded the matter to the trial court with direction to render judgment of not guilty as to those charges. The judgment was affirmed in all other respects. Id., 334–35.

Subsequently, the petitioner filed an amended petition for a writ of habeas corpus, alleging, inter alia, ineffective assistance of his trial counsel, Richard Arconti.[1] Following a one day trial, the habeas court issued a memorandum of decision denying the amended petition for a writ of habeas corpus. The court determined that Arconti did not render deficient performance because, following a *Franks* hearing regarding the admissibility of the videotape; see *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); he employed a reasonable trial strategy by not objecting to the victim's testimony identifying the petitioner as the individual depicted in the footage.[2] The habeas court additionally determined that the petitioner failed to produce any evidence demonstrating a reasonable probability that the outcome of the case would have been different absent Arconti's alleged deficient performance. Thereafter, the habeas court granted the petition for certification to appeal.

On appeal, the petitioner claims that the habeas court improperly determined that Arconti's failure to object to the victim's testimony identifying him as the individual depicted in the surveillance videotape did not constitute ineffective assistance of counsel. The petitioner contends that Arconti should have objected to this identification as an impermissible lay opinion on an ultimate

issue in the case, pursuant to § 7-3 (a) of the Connecticut Code of Evidence, and that his failure to do so resulted in prejudice to the petitioner. We disagree.

"When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong.

"To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment [to the United States constitution]. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 147 Conn. App. 325, 328–29, 81 A.3d 1222 (2013), cert. granted on other grounds, 311 Conn. 911, 84 A.3d 880 (2014).

We conclude that the habeas court's determination that Arconti rendered effective assistance of counsel to the petitioner was not improper. We resolve this claim on the basis of the prejudice prong of the *Strickland* test. See *State* v. *Lameirao*, 135 Conn. App. 302, 327, 42 A.3d 414 ("[i]n its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a [claim of ineffective assistance of counsel]" [internal quotation marks omitted]), cert. denied, 305 Conn. 915, 46 A.3d 171 (2012).

The petitioner failed to meet his burden of demonstrating that, absent Arconti's alleged deficient performance, there was a reasonable probability that he would not have been convicted of the charges against him. In reaching this conclusion, we are persuaded by this court's analysis with respect to the petitioner's sufficiency of the evidence claim raised on direct appeal. *State* v. *Russell*, supra, 101 Conn. App. 332–34; see also *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 67, 6 A.3d 213 (2010) ("[t]his court's finding on direct appeal that the trial court's statement was harmless error . . . while not dispositive, is persuasive" in resolving petitioner's habeas claim of ineffective assistance of counsel [citation omitted]), cert.

denied, 299 Conn. 926, 11 A.3d 150 (2011). On direct appeal, the petitioner claimed that there was insufficient evidence proving that he was the person depicted in the videotape. *State* v. *Russell*, supra, 332.

This court rejected the sufficiency claim, citing an abundance of evidence, aside from the victim's testimony, identifying the petitioner as the individual depicted in the surveillance video: "Apart from the victim's testimony, the jury viewed the videotape and was able to assess for itself whether the individual depicted therein, on the basis of all of his physical characteristics, was the [petitioner]. Moreover, substantial circumstantial evidence supported the jury's finding as to identity. The individual entered the victim's home on a Friday night, a time at which the [petitioner] was aware that the victim's children would be with their father. He seemed familiar with his surroundings, initially checking the room where the victim typically kept a large dog crated. The police determined that there were no signs of a forced entry to the victim's residence; when they thereafter executed a search warrant at the [petitioner's] residence, he immediately surrendered a key to the victim's residence that she denied ever giving him. That search warrant also uncovered items of clothing that matched those worn by the person on the videotape. Those items were not in a dresser or closet but out in the open in the [petitioner's] bedroom.

"Furthermore, the person on the videotape did not behave as would a garden variety prowler but, rather, as someone interested in obtaining personal information about the victim. He ignored a substantial amount of cash attached to the victim's refrigerator and neglected to abscond with any valuables. Instead, the individual focused his attention on the victim's calendar, her caller identification unit and her discarded mail. In the absence of any viable alternative suspect, it was not unreasonable or illogical for the jurors to infer that the [petitioner], who admittedly had parked near the victim's residence in the dark, multiple times per week for the better part of two years, was the individual who entered the victim's residence to forage through her personal belongings." Id., 332–33.

In light of this court's holding on direct appeal that there was ample evidence identifying the petitioner as the intruder depicted in the videotape, it would be a significant hurdle for the petitioner to convince us that there is a reasonable probability that the outcome would have been different if Arconti had objected to the victim's testimony. See *Diaz* v. *Commissioner of Correction*, supra, 125 Conn. App. 67. The record reflects that the petitioner did not present any evidence to the habeas court demonstrating a reasonable probability that the jury would not have found him guilty absent Arconti's alleged deficient performance.

The habeas court quoted the previously mentioned

evidence in support of its conclusion that the petitioner failed to demonstrate prejudice pursuant to *Strickland*. We agree with the habeas court's determination. Significantly, the court stated that "the jury *itself* saw the videotape" and therefore was able to assess independently whether the petitioner was depicted therein. (Emphasis in original.) The videotape showed an individual who gained entry into the victim's home without force, was familiar with his surroundings, and demonstrated an acute interest in accessing personal information about the victim. On the basis of this evidence, the jury reasonably could have concluded, without the victim's testimony, that the petitioner was the intruder. Because the petitioner failed to produce any evidence demonstrating a reasonable probability that he would not have been convicted absent Arconti's alleged deficient performance, we conclude that the habeas court did not improperly determine that the petitioner failed to demonstrate prejudice pursuant to *Strickland*.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The petitioner additionally claimed ineffective assistance of appellate counsel, and that his right to due process was violated by prosecutorial impropriety. Those claims are not presently before this court.

[2] Arconti testified that he did not object to the victim's testimony because, pursuant to the court's determination that the videotape itself was admissible on the basis of a *Franks* hearing; see *State* v. *Ferguson*, 260 Conn. 339, 363–64, 796 A.2d 1118 (2002) (describing procedure for *Franks* hearing); he believed that the victim's testimony with respect to the videotape would be admissible as well. Arconti further testified that he did not object to the victim's testimony identifying the petitioner because he believed that it served to impeach her credibility. Namely, the victim testified that she recognized the individual in the videotape as the petitioner by his eyes. Arconti believed that this testimony impeached the victim's credibility because the individual's eyes were obscured by a scarf and hat. The habeas court determined that Arconti employed a reasonable trial strategy.

Although we do not reach the performance prong of *Strickland*, we note that since the time that this case was litigated in 2004, the legal landscape has changed with respect to eyewitness identification where the victim knows the defendant prior to identifying him or her as the perpetrator. See *State* v. *Wilson*, 308 Conn. 412, 453 n.18, 64 A.3d 91 (2013), quoting *State* v. *Guilbert*, 306 Conn. 218, 259–60, 49 A.3d 705 (2012); *State* v. *Guilbert*, 306 Conn. 218, 259–60, 49 A.3d 705 (2012) ("although there are exceptions, identification of a person who is well-known to the eyewitness generally does not give rise to the same risk of misidentification as does the identification of a person who is not well-known to the eyewitness"); *State* v. *Williams*, 146 Conn. App. 114, 139, 75 A.3d 668 (trial court did not abuse discretion when it precluded expert testimony regarding eyewitness identification where victim knew defendant), cert. granted, 310 Conn. 959, 82 A.3d 626 (2013). In this case, the victim was well-acquainted with the petitioner.

[3] In this appeal, the petitioner additionally claims that the habeas court improperly determined "that the issue of prejudice concerning the victim's opinion testimony with respect to the videotape evidence was res judicata relying on [this court's] earlier determination [in *State* v. *Russell*, supra, 101 Conn. App. 332–34] that there was sufficient evidence distinct from the victim's testimony about the videotape to support the conviction in the context of the petitioner's appellate claim of insufficiency of the evidence to support the verdict." In its memorandum of decision, the habeas court stated that "*distinct from any application of the two-pronged Strickland test*, the Appellate Court has already determined, based on its review of the record, that there was sufficient evidence *distinct* from the victim's testimony to support the conviction. That determination is res judicata and

binding on this court." (Emphasis altered.)

The habeas court's decision makes clear that its discussion of res judicata is wholly distinct from its analysis of the petitioner's claim under the *Strickland* test. Because our conclusion is predicated entirely on the habeas court's analysis pursuant to the prejudice prong of *Strickland*, we need not assess the propriety of its decision as it pertains to the doctrine of res judicata.