******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOHN H. LAMOTTE
(AC 43973)

Prescott, Cradle and DiPentima, Js.

*Syllabus*

Convicted, on pleas of guilty, of two counts of the crime of robbery in the first degree, the defendant appealed to this court, claiming that the trial court improperly denied his request for an evidentiary hearing on his motion to withdraw the pleas. The defendant had been facing a maximum sentence of forty years of imprisonment on the robbery charges. After trial commenced on those charges, the defendant pleaded guilty in exchange for a sentence of six and one-half years of imprisonment followed by seven years of special parole. The trial court accepted the pleas after canvassing him and determining that the pleas were knowingly and voluntarily made with the assistance of competent counsel. The court denied the motion to withdraw the guilty pleas after conducting a hearing during which the defendant claimed that he was under duress during the plea proceeding because he had learned during the trial that an inspector from the state's attorney's office had coerced and given false information to a witness who had not yet testified. The defendant further asserted that his trial counsel rendered ineffective assistance because, inter alia, they failed to pursue an alibi defense on his behalf. *Held* that this court could not conclude that the trial court abused its discretion by not affording the defendant an evidentiary hearing on his motion to withdraw the guilty pleas, as the trial court afforded him ample opportunity to present his claims, clearly addressed each of his arguments appropriately as they were presented and, relying on the transcript of the plea proceeding, concluded that there was no basis for them: as to the ineffective assistance of counsel claim, the court noted that the defendant had indicated on various occasions during the plea canvass that he was satisfied with his counsel, the defendant failed to demonstrate an adequate factual basis to support an evidentiary hearing as to his counsel's alleged failure to pursue the alibi defense, as the defendant indicated during the plea canvass that he understood that, by pleading guilty, he was giving up the right to put on any defenses he might have had, he did not complain then or at any other time that his counsel failed to pursue the alibi defense, the defendant did not proffer facts in support of that defense or claim that he had ever discussed it with his counsel prior to pleading guilty, and neither he nor his counsel proffered whether the defendant possessed such evidence or informed counsel that such evidence existed; moreover, the transcript of the plea proceeding conclusively refuted the defendant's claim of coercion by the state's inspector, as the defendant knew of that incident before pleading guilty, and at no time during the plea proceeding did he mention it to the court.

Argued October 21, 2021—officially released January 18, 2022

*Procedural History*

Substitute information charging the defendant with two counts of the crime of robbery in the first degree, and with one count each of the crimes of larceny in the third degree and larceny in the fourth degree, brought to the Superior Court in the judicial district of New London and tried to the jury before *Jongbloed, J.*; thereafter, the defendant was presented to the court, *Strackbein, J.*, on pleas of guilty to two counts of robbery in the first degree; subsequently, the court, *Strackbein, J.*, denied the defendant's motion to withdraw the pleas and rendered judgment of guilty; thereafter, the state entered a nolle prosequi as to the charges of larceny

in the third degree and larceny in the fourth degree, and the defendant appealed to this court. *Affirmed.*

*Jennifer B. Smith*, assistant public defender, for the appellant (defendant).

*Sarah Hanna*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Jennifer F. Miller*, former assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, John H. LaMotte, appeals from the judgment of conviction rendered by the trial court following the denial of his motion to withdraw his guilty pleas. On appeal, the defendant claims that the court improperly denied his request for an evidentiary hearing on his motion to withdraw those pleas. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant procedural history. In connection with the defendant's alleged commission of two bank robberies in Groton, on December 6, 2016, and September 18, 2017, the defendant was charged, by way of a substitute information dated May 8, 2019, with two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), one count of larceny in the third degree in violation of General Statutes § 53a-124 (a) (2), and one count of larceny in the fourth degree in violation of General Statutes § 53a-125. On May 28, 2019, after his jury trial commenced,[1] the defendant pleaded guilty, under the *Alford* doctrine,[2] to two counts of robbery in the first degree pursuant to a plea agreement. In exchange for those pleas, the defendant agreed to a total effective sentence of six and one-half years of incarceration, followed by seven years of special parole. The court canvassed the defendant, found that the pleas were knowingly and voluntarily made with the assistance of competent counsel and accepted them. The court ordered a presentence investigation and continued the case for sentencing.

Thereafter, the defendant sent a letter, dated June 28, 2019, to the court, seeking to withdraw his guilty pleas on the grounds of a claimed conflict of interest and ineffective assistance of counsel, and asked that new counsel be appointed to represent him. On August 7, 2019, the defendant and his counsel appeared before the court for sentencing, at which time the court addressed the letter it had received from the defendant. The court allowed defense counsel to withdraw, at counsel's request, from the defendant's case. The court indicated that it would conduct a hearing on the defendant's motion to withdraw his guilty pleas and explained to the defendant that he would be assigned new counsel to represent him at that hearing. Thereafter, the defendant told the court that his attorney had a conflict of interest that was not disclosed to him for sixteen months, and, thus, he "wasn't being defended." He stated: "I was brain-dead because they had a fake witness come in, and then they did nothing about it at the trial. . . . And they also caught the prosecution, the inspector who was sitting there coercing the witnesses before they even went in front of the jury. And they were informed about it, still didn't do nothing about it. . . . I have a witness here in court that seen it going

on . . . and I have another one, a state witness, that'll come in and testify to verify that. . . . Them telling the . . . witnesses that I was guilty. They know I did it. He already signed the confession. You can say whatever you want in front of the jury. It's not gonna matter, and they informed [my counsel] here, and he didn't do nothing about it to stop it; plus, the false witness that they brought in at the end. I told them that days ahead, and nobody's ever gotten to the bottom of that." The court reiterated to the defendant that new counsel would be assigned "who will listen to [the] allegations [underlying his motion] and see whether they think it's valid enough to try to withdraw the plea." The defendant responded: "Most of it is right on the tape, recorded at the trial." The court ordered that new counsel be appointed to represent the defendant and continued the case to give the defendant's new counsel the opportunity to review the motion to withdraw the guilty pleas.

On December 19, 2019, the court conducted a hearing on the defendant's motion to withdraw his guilty pleas. At the hearing, the defendant's new counsel argued: "By way of a proffer, [the defendant] is advancing two arguments why his plea should be withdrawn. The first really goes to the concept that he was under duress or that his plea was not voluntary. And the facts, or the proffer which backs that up, is that [the defendant's] sister was present outside during the trial and overheard one of the state's inspectors speaking to a witness, who had not testified yet, making some comments to the witness that [the defendant] was guilty, that they've got—they've got it on paper that he's done this before.

"There was also an allegation that there was some sort of a confession which—a written confession which [the defendant] had executed that was being shown to the potential witness, Melanie Brown . . . and that [the defendant's] sister relayed her concerns to that inspector. And, moreover, she relayed those facts to [the defendant] over the weekend during that trial, and . . . that [the defendant] heard these words and in effect realized that the fix was in for him, in not so many words—that he really didn't have a fair opportunity. And that was the duress that he was under when he did enter his plea. He felt that it was the best that he could do and that his—well, his will was overborne as a result of those facts made known to him.

"The second argument that he is advancing is that his prior counsel were ineffective. And I believe that there are two grounds for that: number one, there was a potential conflict of interest with a potential third party, Kyle Hare . . . and that wasn't made known to [the defendant] until immediately before the trial. And the second ground is that his alibi was not adequately pursued in terms of photographs of him at a different location around when the robbery occurred, as [well as] phone records indicating he wasn't in the area.

"Based upon the totality of those facts, Your Honor, I'd respectfully request that you grant [the defendant's] motion to withdraw his guilty plea, or, in the alternative, give him the opportunity of an evidentiary hearing to further lay out those facts for you."

In response, the prosecutor argued that the defendant had been thoroughly canvassed by the court when he entered his guilty pleas, and the record reflected that there "was no indication whatsoever that [the defendant] felt that his will was overborne at any point in time." The prosecutor contended that the defendant simply had "buyer's remorse" after entering his guilty pleas. The prosecutor further argued that the defendant failed to allege sufficient facts to warrant an evidentiary hearing on his ineffective assistance of counsel claims and that those claims were thus better suited for habeas proceedings in which the defendant could "flesh out any such claims."

Defense counsel then added: "One of the other grounds that [the defendant] is advancing with regard to the ineffective assistance claim is that it was his understanding that a probation which was—he was on probation in Rhode Island. He was informed that, as a condition of the—the deal that he was accepting, that that probation would be terminated, and it was not terminated.

"He has documentation indicating that he's still on the—that probation. So, that's just one of the other grounds on the ineffective assistance claim, Your Honor."

Having heard the arguments of both counsel, the court first noted that, at the time the defendant pleaded guilty, he was "in the middle of trial." The court noted that the defendant was facing a maximum prison sentence of forty years for the two robbery charges and that the sentence that he would receive pursuant to the plea agreement was not "even close to that." The court then explained that it was referring to the transcript of the plea proceeding and recounted that proceeding as follows: "All right, so when you came back from the trial and decided to plea[d], [the prosecutor], who [is] not here, went through the facts of the case and you had pled—that you had pled guilty, and I say at that time, did you have enough time to talk to your lawyers about these cases and your decision to plead guilty under what's known as the *Alford* doctrine, and you said yes.

"And I said, did they go over with you the maximum sentence you could have received in jail if you went to or finished your trial, and if you were convicted on the evidence the state had to show that you were guilty? And then I go over it: For two counts of robbery in the first degree, each one holds twenty years in jail, so for what you pled to today, just these two counts, you could

go to jail for forty years. Did they go over that with you? Yes.

"And so, you're satisfied, then, with this plea agreement and your lawyer's help? Yes.

"And you understand that by pleading guilty, you're giving up your right to actually, basically, to finish the trial. You could have had, as I say, the rest of your trial, and you could have testified if you wanted to, put on witnesses of your own, confronted and cross-examined the witnesses against you, put on any defenses you might have had with the help of your lawyers. But we weren't finishing your trial because of your pleas. Do you understand that? Yes.

"I then say, do you have any other open charges anywhere else? No. I don't. Are you on probation anywhere else? Yes. You are? Yes. Rhode Island.

"And then [the prosecutor] said, my understanding is that [the defendant] had been placed on probation in Rhode Island but had been violated, and I believe that probation may have been terminated. And then [defense counsel] said, that was my understanding.

"So, you're not on probation anywhere else? Are you on parole anywhere else? Am I on parole, you ask. No.

"And this plea agreement—you're in favor of this plea agreement based on the fact that you could have gone to jail for forty years; so you're satisfied then, again, with this plea agreement and your lawyer's help. And you say, I'm going to have to be. And I said, no, you don't have to be because you're in the middle of trial. And you said, it could get worse; I'll take this. I'm satisfied.

"I said, you're satisfied with this plea agreement based on the evidence you've seen so far in the trial and the exposure that you had if you were to be convicted? And you say, um hum. And I say, right? That was forty years. Right? And you say, yes.

"I say, okay, because I need to know that you're satisfied with the plea agreement and your lawyer's help. Okay? You say, yes. And then I went through the part about being a [United States] citizen, is anyone threatening you or forcing you or promising you anything to get you to plea[d], and you say, no. So, your pleas are voluntary? You say, yes.

"Then I say, is it your understanding of the *Alford* doctrine that you might disagree with some of the facts the prosecutor said about the cases, but if you finish your trial there's a good chance you could be convicted and get a much worse sentence than this. Is that your understanding of the *Alford* doctrine? And you say, yes.

"And then I say, you also understand, once I accept your pleas today you can't change your mind later? You say, yes. I said, do you have any questions about the

questions I've asked you? And you say, no. And I say, you're clear? And you say, yes.

"And then I asked if there's any reason I shouldn't accept the plea, and [the prosecutor] went on to add some things to the record. And he said, the only thing I wanted to add for the record is to make explicit what has been implicit. Your Honor has referred to it as, at least peripherally in your comments, that we've had several days of trial, and, although obviously I'm not privy to attorney-client communications, the record should reflect that, in terms of understanding what's happening today, it's been my observation and experience that [the defendant] has been energetically and diligently represented, and there's been [an] extensive amount of communication that I've been at least a witness to visually, if not hearing it. All of that precedes this plea.

"And I say to you, do you understand that? Do you hear what the prosecutor is saying: that you've worked very well with your two lawyers, and that they've worked very hard on your case? And you say: they did. I say, you're acknowledging that? And you say, yes. I say, okay.

"And [the prosecutor] also added: They've kept me and [my cocounsel] very, very busy, meaning the lawyers, because they were so diligently representing you. And I then say, which is their job to do, to keep [the prosecutors] busy. And at a certain point you realize that this agreement will be a much better plan for you. Is that what you've come to understand? And you say, yes.

"Then I ask if there's any reason not to accept the pleas. [The prosecutor] says, no. [Defense counsel] says, no. And I made the finding and the agreed-upon sentence. I said there'd be a presentence investigation. Your lawyer would be notified when it would take place. The agreed-upon sentence: six and a half years followed by seven years of special parole on each count, concurrent.

"And then I told you not to pick up any new charges while you're locked up because you just pled to forty years worth of cases. Okay? So that's where we are.

"Based on that, this transcript, your answers, your total understanding that you had two lawyers working diligently on your behalf, I'm denying your motion to withdraw your plea today."

The following colloquy then occurred:

"The Defendant: Well, the problem I have with it is— is the conflict of interest.

"The Court: Okay. I don't see a conflict of interest here.

"The Defendant: He didn't tell me for sixteen and a half months. I don't even know if he was working on

my case.

"The Court: I'm just going by what you said about your lawyers.

"The Defendant: I was boxed in.

"The Court: You were in the middle of trial. . . . [The prosecutor] mentioned that, if you don't like your lawyers, that's not what happens for sentencing. That's not one of the grounds. You had effective assistance of counsel. If you feel you didn't, then you can file a habeas against your other lawyers, but . . . they're going to get a transcript of this and of your original plea at the habeas court and see whether or not they felt that there was effective assistance of counsel.

"The Defendant: Yeah. Well—

"The Court: They did a good job for you . . . .

"The Defendant: One more thing is that he was informed about all the coercing and didn't do nothing about it; he just let it fly.

"The Court: Okay. That's because . . . it's arguable about whether there was any coercing or not. The real bottom line is what happened in this case and what you pled to: two bank robberies.

"The Defendant: Okay. And I understand that.

"The Court: And with your record, I'm just telling you, if you were convicted with your record of—

"The Defendant: The other thing—

"The Court: —forty-four prior charges, including other bank robberies, you would have gotten such a much higher sentence if you were convicted than six and a half, plus seven, special. You understand that.

"The Defendant: Oh, I understand that.

"The Court: And that's why you took this deal. Right?

"The Defendant: Yeah. I was thinking there was no probation, but basically what I want to go back to is when you told me when the DNA was eliminated from both robberies, that do not let them force you into any pleas when we were talking about going to trial. You told me do not let them force you into any pleas.

"The Court: Right.

"The Defendant: But if at any point in time during the trial you can come back over here and get your original sentence, which was only five years. Now that's—

"The Court: Okay. I never said you would have your—

"The Defendant: —off the table. I don't know if anybody's living up to their word.

"The Court: I never said you would get your original sentence because, once you go to trial, you don't get

the original offer.

"The Defendant: You said that.

"The Court: So, at this point, I think that—and then plus, you've been getting credit all the time, and so I understand you'll be getting credit right back. All right?

"The Defendant: That's . . . not the point. That's not the point.

"The Court: Well, I think the point is that you've pled in front of me voluntarily, and you got an excellent deal based on the charges, the evidence the state had, and the amount of work your lawyers did for you. . . .

"The Defendant: It's not the . . . I'm not even supposed to be on probation in Rhode Island. I can go back to Rhode Island and face violation and get ten years suspended and—you know—on the transcript it said probation was terminated. It's not. They lie to your face in open court.

"The Court: Well, they didn't lie. They said it was their understanding that it was over. But, if it—

"The Defendant: They said it was forfeited.

"The Court: You know what? Whether it was or wasn't . . . I have no jurisdiction over that. If you said yes, I'm on probation in Rhode Island, my answer is, I have no control over what happens with that.

"The Defendant: But it was part of the plea bargain all in the same transcript in itself. So, the deal is not even the deal I was offered.

"[The Prosecutor]: I disagree, Your Honor. I think that the record, it's relatively clear—not relatively clear, the record is clear. [The prosecutor] said that it's his understanding, but there were no promises. . . . I didn't hear any promises referenced in that.

"With respect to this coercion claim again, I don't want my silence to in any way be inferred that I would agree with that. I think that . . . is clearly in dispute. And I think there was never any mention during the plea canvass—and Your Honor has not only put it on the record and read it into the record but also is going to make it a court exhibit—that he, at any point, said no . . . I was supposed to get my original offer.

"So, I think the record is clear. Again, it's buyer's remorse. It's an attempt by [the defendant] to . . . have his cake and eat it, too. And what I mean by that is, he saw what the evidence was, he decided to plead guilty under the *Alford* doctrine. He did that. The jury was dismissed. All of that evidence was for naught for that particular trial, and now he's trying to change it again.

"And I would respectfully submit that we end this and deny the motion and go to the sentencing."

The court then indicated that it was denying the

defendant's motion to withdraw his guilty pleas and proceeded to sentencing. When the court asked the defendant if he wanted to say anything prior to the imposition of sentence, the following colloquy ensued:

"The Defendant: Yeah. That's—I don't know. I got nothing to say about nothing, just like when you boxed me in before. Go ahead. Do your thing.

"The Court: Okay. So, you're saying I boxed you in. How?

"The Defendant: No. The lawyers did. It's like they were letting fake witnesses, they weren't caring about the coercion. You know, just a typical New London thing, I guess.

"The Court: Okay. Well, I would take—

"The Defendant: So, just go ahead. It's a circus show. Sentence me and be done with it.

"The Court: I would disagree with your characterization. I think—

"The Defendant: Well, that's what—I'm speaking from the heart. I have nothing to hide here.

"The Court: Well, I'm—you know. Especially when you came back over here and pled. It's not that you aren't familiar with the legal system, based on your record.

"The Defendant: I know how I pled, and I was disturbed at it and you noticed it, too, and you know deep inside.

"The Court: No. I asked you—I asked you—

"The Defendant: That's why you had to keep asking me—

"The Court: Well, I wanted to make—

"The Defendant: Because I didn't want to answer the questions.

"The Court: Well, I wanted to make sure—

"The Defendant: I was boxed in.

"The Court: I just wanted—you weren't boxed in. One of the questions is, is anybody threatening you or forcing you or promising you anything.

"The Defendant: No. Everything's good.

"The Court: You said no.

"The Defendant: Go ahead. You give me something to live for. I mean, just go ahead and sentence me.

"The Court: Okay . . . [t]hat's what I'm going to do."

The court then sentenced the defendant, in accordance with the plea agreement, to a total effective sentence of six and one-half years of incarceration, followed by seven years of special parole. This appeal

followed.

On January 21, 2021, the defendant, through counsel, filed a motion for articulation, asking the trial court to articulate its ruling on the defendant's request for an evidentiary hearing on his motion to withdraw his guilty pleas. On January 28, 2021, the court filed a written articulation, in which it indicated that it had implicitly denied the defendant's request for an evidentiary hearing based on the transcript of the plea proceeding and the subsequent hearing that it held on the motion to withdraw. The court also again addressed each of the defendant's arguments advanced in support of his motion to withdraw his guilty pleas. As to the defendant's claim that his trial counsel "was ineffective for failing to adequately investigate his alibi and by giving him misleading information to induce his plea[s]," the court articulated: "There is no basis for this allegation. On page [11] of the transcript [of the plea proceeding], the court asks the defendant if he understood what the prosecutor was saying—that [the defendant] worked very well with his two lawyers, and they worked very hard on his case, and the defendant responded, 'they did,' and, to emphasize this, the court then said, 'you're acknowledging that?' and the defendant said, 'yes.' " As to the defendant's claim that his trial counsel "had a possible conflict of interest with a potential third-party suspect," the court referred again to the transcript of the plea proceeding, indicating: "As the court informed the defendant, 'you have other remedies for your other complaints. The remedy for this allegation would be a habeas petition where a different forum might be willing to hear evidence on this allegation." And, finally, as to the defendant's claim that "his plea was involuntary and made under duress because the state's attorney's inspector was coercing and giving false information to a witness," the court reasoned: "The plea canvass was exceptionally clear regarding the voluntariness of the pleas. Pages [8 and 9] of the transcript cover the voluntariness of the pleas. The court was very careful regarding the defendant's answers because he had been difficult throughout the case, and the court wanted to be sure he was entering his pleas voluntarily. In relevant part, the court said, 'you are satisfied with this plea agreement based on the evidence you've seen so far in the trial and the exposure that you had if you were to be convicted?' The defendant responded, 'um hum' and the court said, '[R]ight? That was forty years, right?'

"The court asks, 'is anyone threatening you or forcing you or promising you anything to get you to plead,' and the defendant answers, 'no.' The court asks, '[S]o, your pleas are voluntary?' The defendant replies, '[Y]es.'

"There is no mention of coercion or threats or duress. The court's canvass and the defendant's responses are clear. The defendant understood the canvass, asked questions and, with approximately forty-four prior con-

victions is not unfamiliar with a plea canvass." The court also noted that it had attached a copy of the entire transcript of the plea proceeding to its articulation.

On appeal, the defendant claims that the court erred in denying his request for an evidentiary hearing on his motion to withdraw his guilty pleas. We begin with the standard of review and the relevant principles of law that govern our analysis of the defendant's claim on appeal. "It is well established that [t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . .

"Motions to withdraw guilty pleas are governed by Practice Book §§ 39-26 and 39-27. Practice Book § 39-26 provides in relevant part: A defendant may withdraw his . . . plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his . . . plea upon proof of one of the grounds in [Practice Book §] 39-27[3] . . . .

"We further observe that there is no language in Practice Book §§ 39-26 and 39-27 imposing an affirmative duty upon the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea. . . . [T]he administrative need for judicial expedition and certainty is such that trial courts cannot be expected to inquire into the factual basis of a defendant's motion to withdraw his guilty plea when the defendant has presented no specific facts in support of the motion. To impose such an obligation would do violence to the reasonable administrative needs of a busy trial court, as this would, in all likelihood, provide defendants strong incentive to make vague assertions of an invalid plea in hopes of delaying their sentencing. . . .

"When the trial court does grant a hearing on a defendant's motion to withdraw a guilty plea, the requirements and formalities of the hearing are limited. . . . Indeed, a hearing may be as simple as offering the defendant the opportunity to present his argument on his motion for withdrawal. . . . [A]n *evidentiary* hearing is rare, and, outside of an evidentiary hearing, often a limited interrogation by the [c]ourt will suffice [and]

[t]he defendant should be afforded [a] reasonable opportunity to present his contentions. . . .

"Thus, when conducting a plea withdrawal hearing, a trial court may provide the defendant an opportunity to present a factual basis for the motion by asking open-ended questions. . . . Furthermore, in assessing the adequacy of the trial court's consideration of a motion to withdraw a guilty plea, we do not examine the dialogue between defense counsel and the trial court . . . in isolation but, rather, evaluate it in light of other relevant factors, such as the thoroughness of the initial plea canvass. . . .

"This flexibility is an essential corollary of the trial court's authority to manage cases before it as is necessary. . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . Therefore, the trial court is not required to formalistically announce that it is conducting a plea withdrawal hearing; nor must it demarcate the hearing from other related court proceedings. It may conduct a plea withdrawal hearing as part of another court proceeding, such as a sentencing hearing. . . . When a trial court inquires into a defendant's plea withdrawal motion on the record, it is conducting a plea withdrawal hearing." (Citations omitted; emphasis altered; footnote added; internal quotation marks omitted.) *State* v. *Simpson*, 329 Conn. 820, 836–39, 189 A.3d 1215 (2018).

"In considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. If such allegations furnish a basis for withdrawal of the plea under [Practice Book § 39–27] and are not conclusively refuted by the record of the plea proceedings and other information contained in the court file, then *an evidentiary hearing is required*. . . .

"An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion is without merit. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39–27]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Salas*, 92 Conn. App. 541, 544–45, 885 A.2d 1258 (2005).

Here, the defendant asserts two grounds on which

the court should have afforded him an evidentiary hearing on his motion to withdraw his guilty pleas: (1) his trial counsel was ineffective by failing to pursue an alibi defense; and (2) his pleas were not voluntary because the state's inspector was overheard coercing witnesses.[4] As to the defendant's claim of ineffective assistance of counsel,[5] the court reviewed the entire transcript of the plea proceeding on the record, noting the various times that the defendant expressed his satisfaction with his trial counsel. In its written articulation, the court referenced one specific instance during the plea proceeding when the defendant indicated his satisfaction with his trial counsel. In fact, the defendant stated that he was satisfied with the plea agreement and his counsel three additional times during the plea proceeding.[6]

As to the defendant's specific claim that his trial counsel was ineffective in failing to pursue an alibi defense on his behalf, the transcript of the plea proceeding reflects that the defendant was specifically informed by the court of his option to continue with the trial of his case, and that, by pleading guilty, he was giving up the right to "put on any defenses [he] might have had . . . ." The defendant indicated that he understood, and he did not, at that time or any other time during that proceeding, or at any time prior to pleading guilty, complain that his counsel had failed to pursue an alibi defense on his behalf. Moreover, the defendant did not proffer any facts in support of his alleged alibi defense or claim that he had ever discussed an alibi defense with his counsel prior to pleading guilty. Although the defendant's new counsel argued that his trial counsel did not adequately pursue his alibi defense "in terms of photographs of him at a different location around when the robbery occurred, [and] phone records indicating [that] he wasn't in the area," he never expanded on that vague assertion. Neither the defendant nor his counsel proffered whether he was in possession of such evidence or whether he informed his trial counsel that such evidence existed. Accordingly, the defendant failed to demonstrate an adequate factual basis to support an evidentiary hearing on this claim.[7]

The defendant's claim of coercion is conclusively refuted by the transcript of the plea proceeding. According to the defendant, his sister allegedly informed him, during his trial, that she had overheard the state's inspector coercing and giving false information to witnesses. The defendant therefore knew of these alleged incidents prior to pleading guilty in this case. In fact, when the court initially asked him about the letter that he had written asking to withdraw his guilty pleas, the defendant alleged that he had informed his counsel of this alleged coercion "days ahead" but that they never "[g]ot . . . to the bottom of that." At no time did the defendant mention this to the court during its thorough plea canvass. Rather, the defendant

repeatedly told the court that his guilty pleas were voluntary. Based upon the well established principle "that [a] trial court may properly rely on . . . the responses of the [defendant] at the time [he] responded to the trial court's plea canvass"; (internal quotation marks omitted) *State* v. *Stith*, 108 Conn. App. 126, 131, 946 A.2d 1274, cert. denied, 289 Conn. 905, 957 A.2d 874 (2008); the court properly determined that the defendant's claim that his pleas were involuntary did not merit an evidentiary hearing.

In sum, the court conducted a hearing on the defendant's motion to withdraw his guilty pleas and implicitly concluded that an evidentiary hearing was not required. The court afforded the defendant and his newly appointed counsel ample opportunity to present his claims but, relying on the transcript of the plea proceeding, concluded that there was no basis for them. On the basis of our review of the record, the court clearly addressed each of the defendant's arguments appropriately as they were presented. Accordingly, we cannot conclude that the court abused its discretion by not affording the defendant an evidentiary hearing on his motion to withdraw his guilty pleas.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At the time the defendant entered his guilty pleas, the jury had been empaneled and the state had already presented evidence.

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Celaj*, 163 Conn. App. 716, 718–19 n.3, 141 A.3d 870 (2016).

[3] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . .

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

[4] The defendant also claims that his trial counsel was ineffective as a result of having given him misleading information regarding his probationary status in Rhode Island to induce his guilty pleas. Because the defendant does not specifically reference his Rhode Island probation in the argument portion of his appellate brief, this claim is inadequately briefed. Accordingly, we decline to afford it review. See, e.g., *Robb* v. *Connecticut Board of Veterinary Medicine*, 204 Conn. App. 595, 611, 254 A.3d 915, cert. denied, 338 Conn. 911, 259 A.3d 654 (2021).

At oral argument before this court, the defendant's appellate counsel conceded that the defendant had waived his conflict of interest claim.

[5] The defendant claims on appeal that the trial court's "mistaken belief that a habeas was the only means by which to address the defendant's ineffective assistance of counsel claims resulted in its failure to give proper consideration to the defendant's request." Although the court did, at one point during the hearing on the motion to withdraw, tell the defendant that a claim of ineffective assistance of counsel is not a ground for withdrawing a guilty plea at the time of sentencing, the court clearly and thoroughly considered his ineffective assistance claims, as set forth in this opinion. We construe the court's statement telling the defendant that he could file a habeas action simply as advising him that he could further pursue his ineffec-

tive assistance claims in another forum.

[6] As noted by the case law cited herein, the plea canvass is only one factor in assessing the adequacy of the trial court's consideration of a motion to withdraw a guilty plea. There are, of course, cases in which facts concerning the adequacy of counsel's representation might become known to a defendant after he or she pleads guilty and before the imposition of sentence. In those cases, a defendant's stated satisfaction with his or her counsel's representation during the plea canvass may be afforded less weight than in a case such as this one.

[7] Additionally, neither the defendant nor his counsel alleged that he was prejudiced by his trial counsel's failure to pursue an alibi defense on his behalf. He did not allege that, but for his trial counsel's ineffective assistance, he would not have pleaded guilty and would have continued with his trial. In fact, at the hearing on his motion to withdraw his guilty pleas, the defendant told the court that he wanted a five year sentence that apparently had been discussed in earlier plea negotiations. He therefore failed to allege a requisite interrelationship between his counsel's alleged ineffectiveness and his guilty pleas. See *State* v. *Lynch*, 193 Conn. App. 637, 659–60, 220 A.3d 163 (2019), cert. denied, 335 Conn. 914, 229 A.3d 729 (2020).

———————————————