******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.*
# JAYVELL J. WASHINGTON
# (AC 47703)

Cradle, C. J., and Suarez and Bishop, Js.

*Syllabus*

Convicted, following an unconditional plea of guilty, of assault in the second degree and criminal possession of a firearm, the defendant appealed. He claimed that the trial court abused its discretion in denying his motion to withdraw his guilty plea filed pursuant to the rules of practice (§§ 39-26 and 39-27). *Held*:

The trial court did not abuse its discretion in rejecting the defendant's argument that he was entitled to withdraw his guilty plea pursuant to Practice Book § 39-27 (4) on the basis of ineffective assistance of counsel, specifically, that defense counsel allegedly failed to investigate all exculpatory evidence prior to advising the defendant to plead guilty, as the defendant failed to make any showing, apart from bare assertions, that, as a result of his counsel's ineffective assistance, he was prejudiced and that he would have insisted on going to trial if he had obtained complete discovery from the state.

The trial court did not abuse its discretion in rejecting the defendant's argument that he was entitled to withdraw his guilty plea pursuant to Practice Book § 39-27 (2) because the prosecution allegedly suppressed certain material in violation of *Brady* v. *Maryland* (373 U.S. 83) after a request by the defense, as the defendant's *Brady* claim amounted to nothing more than conclusory assertions, and, accordingly, the defendant failed to satisfy his burden of proving that his guilty plea was made involuntarily pursuant to § 39-27 (2).

Argued February 19—officially released May 19, 2026

*Procedural History*

Substitute information charging the defendant with the crimes of assault in the second degree and criminal possession of a firearm, brought to the Superior Court in the judicial district of Bridgeport, geographical area number two, where the defendant was presented to the court, *McShane, J.*, on a plea of guilty; thereafter, the court, *McShane, J.*, denied the defendant's motion to withdraw his guilty plea and rendered judgment of guilty in accordance with the plea, from which the defendant appealed to this court. *Affirmed*.

*Mary Boehlert*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, supervisory assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Michael A. DeJoseph*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SUAREZ, J. The defendant, Jayvell J. Washington, appeals from the judgment of conviction rendered following the trial court's denial of his motion to withdraw his guilty plea. On appeal, the defendant claims that the court abused its discretion in denying his motion to withdraw his guilty plea. Specifically, the defendant argues that (1) his defense counsel rendered ineffective assistance by suggesting that he plead guilty without first receiving full discovery from the state, and (2) the state, by not disclosing certain evidence, violated the rule set forth in *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We disagree and, accordingly, affirm the judgment of the court.

The following facts, as set forth by the prosecutor as the factual basis underlying the plea, and procedural history are relevant to our resolution of this appeal. On or about July 23, 2017, the defendant shot the victim, Eugene Rogers, causing injury. The defendant previously had been convicted of a felony and, as such, was not lawfully allowed to possess a firearm. The defendant was arrested and subsequently charged, in the state's operative substitute information, with one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (1) and one count of criminal possession of a firearm in violation of General Statutes (Rev. to 2017) § 53a-217 (a).

In early September 2017, the defendant filed a self-represented motion seeking discovery information from the state, including exculpatory and/or impeachment evidence pursuant to *Brady*. The defendant filed a similar request through counsel on September 13, 2017. On January 23, 2018, the state filed a notice of disclosure

in which it indicated that it had disclosed all exculpatory information known to it at that time. The notice of disclosure stated that "[m]edical records of the victim or other person which the state intends to present [at] trial and which are not otherwise identified therein have been or will be subpoenaed to the clerk's office and opened upon order of a judge of the Superior Court."

On January 2, 2024, the parties appeared before the court, at which time the defendant had rejected a prior plea offer by the state. At that time, defense counsel stated that he was waiting for outstanding discovery from the state. The prosecutor responded, "They want discovery on the case that was already tried.[1] That's already been done. I'm not making that discovery again but any new materials I will attempt to track down." (Footnote added.) Defense counsel then indicated that he had sent a "revised email with materials from this specific case that are mentioned in police reports that [he] was requesting." The court stated that, "if there's additional discovery, I'd rather make sure it's done."

On March 4, 2024, the parties appeared before the court and, initially, the defendant rejected the state's plea offer of five years of incarceration. The prosecutor then indicated to the court that he was "willing to sit down with [the defendant] and [defense counsel]" in an effort to conduct further negotiations. After a recess, the defendant withdrew his prior election and pleaded guilty to both charges in the operative information. In exchange for that plea, the defendant agreed to a total effective sentence of five years of incarceration, two years of which was a mandatory minimum, to be served concurrently with a forty year sentence that the defendant already was serving for unrelated charges. The following colloquy occurred during the plea canvass:

---

[1] The defendant was convicted of intentional manslaughter in the first degree with a firearm, criminal possession of a pistol or revolver, and carrying a pistol or revolver without a permit arising out of the fatal shooting of the victim, Eugene Rogers, in 2019. See *State* v. *Washington*, 345 Conn. 258, 262–64, 284 A.3d 280 (2022). On appeal, our Supreme Court affirmed the judgment of conviction. Id., 289.

"[The Prosecutor]: [The defendant, as to] the substituted information, which will [you] plead to assault in the second [degree]. Guilty or not guilty?

"The Defendant: Guilty.

"[Defense Counsel]: Which plea to criminal possession with a firearm, guilty or not guilty?

"The Defendant: Guilty.

"[The Prosecutor]: Your Honor, on or about July 23rd of 2017, the defendant shot [the victim] causing injury to [the victim] and [having] previously [been] convicted of a felony . . . was not allowed to lawfully possess said firearm. . . .

"The Court: Okay. [The defendant], I've got a series of questions to ask you. If at any time you don't understand just say time out. [Defense counsel is] right next to you. You could certainly [have] time to speak to him. . . . Have you had an opportunity to discuss with [defense counsel] your decision to plead guilty to these two charges?

"The Defendant: Yes.

"The Court: Have you also discussed what the state would have to prove in order for you to be found guilty of assault in the second degree and criminal possession of a firearm?

"The Defendant: Yes. . . .

"The Court: All right. Are you satisfied with your lawyer's representation here?

"The Defendant: Yes.

"The Court: All right. And, counsel, [did] you have an opportunity to discuss with your client the elements as well as the maximum sentence?

"[Defense Counsel]: Yes, Your Honor. . . .

"The Court: You're also giving up the right to have [defense counsel] subpoena witnesses, cross-examine

witnesses, present evidence and you could have testified on your own behalf if you so chose. But you understand by pleading guilty you're giving up a right to a trial and all those rights that go with it. Do you understand that?

"The Defendant: Yes. . . .

"The Court: All right. Now, you heard the facts presented by the prosecutor, you essentially agree with those facts?

"The Defendant: Yes.

"The Court: All right. So, you're pleading guilty [because] you are guilty, is that correct?

"The Defendant: Yes. . . .

"The Court: Has anyone forced or threatened you to get you to plea?

"The Defendant: No.

"The Court: Are you pleading under your own free will?

"The Defendant: Yes."

The court, *McShane*, *J.*, after canvassing the defendant, found that the plea was knowingly and voluntarily made with the assistance of competent counsel and accepted it.[2] The court ordered a presentence investigation and continued the case for sentencing.

On April 18, 2024, the defendant, although he was represented by counsel at the time, filed a self-represented motion to withdraw his guilty plea. Therein, he alleged, inter alia, that (1) he had entered into an uninformed plea, (2) the state's failure to honor the defense's request to fully disclose discovery materials violated his constitutional rights, and (3) defense counsel rendered deficient performance in failing to investigate all exculpatory materials prior to advising him to plead guilty.

On May 1, 2024, the defendant returned to the court, *McShane*, *J.*, for his sentencing hearing. Before the court

---

[2]The defendant does not argue on appeal that the court's plea canvass was inadequate or otherwise improper.

sentenced the defendant, he heard from the defendant on his self-represented motion to withdraw his guilty plea. Defense counsel stated at that time that he was not adopting the defendant's motion and indicated that he had "reviewed the plea transcript, and that's the reason why my office is not adopting the motion. I see no basis for the motion." The court asked the defendant if he "want[ed] to add anything else to what [he] wrote" in his motion, after which the following colloquy took place:

"The Defendant: [It's] my belief that [there are] not facts . . . in law to sustain the guilty verdict, and the fact that my attorney suggested that I plead guilty without receiving full discovery is ineffective.

"The Court: Okay.

"The Defendant: So, I believe that my rights are being violated in that—in that sense. And the plea is an uninformed plea. And, in order for me to accept the plea, [I] have . . . to be informed of the nature and cause of this plea, and if I don't have full discovery, in order to make a full determination as to whether or not, you know, the evidence is substantial or not, then I don't believe that I can knowingly and intelligently enter into the plea.

"The Court: Okay. Anything further?

"The Defendant: That's it, sir. . . .

"The Defendant: Just so I could—

"The Court: Sure.

"The Defendant: —add onto that. The fact that there's evidence that exists, my belief, that would prevent the state from moving forward with a trial is a specific ineffective claim in which I'm stating, and the exculpatory information or evidence that isn't being turned over by the state is what's preventing me from actually feeling confident with moving forward to trial. And this is why I [pleaded guilty], because I'm not getting the information that we've been asking for from the state in regards to this discovery. . . .

"The Defendant: So . . . there's a statement that was given to the medical personnel which contradicts the police report where the victim stated that he didn't know who did it. With this statement . . . in order for a hearsay statement to be admissible, it must be corroborated and it has to be trustworthy. If you have a statement that actually contradicts this hearsay police report, a statement that is admissible under the business entry [exception], then this will prevent the hearsay statement from being admitted. Without this hearsay statement, this is all that the state is relying on to take me to trial. If there's something that completely contradicts this statement, then the state can't move forward. And, without the state being able to move forward and without my attorney investigating this information, then he was ineffective and the state is, by not turning over this exculpatory information, [committing] a *Brady* violation.

"The Court: Okay. Thank you. The court is going to rule as follows. I'm denying your motion to withdraw the plea. . . . I took the plea originally. . . . Then I found at the time, and after reviewing the canvass, that it was a knowingly, willingly, and voluntarily [entered] plea . . . on your behalf. A plea that you entered after negotiating, so to speak . . . directly with the state's attorney. Your claim of ineffective assistance of counsel is best reserved for another forum and not this. So, your motion, although not accepted by the Public Defender's Office, is denied . . . ."

The defendant was then sentenced to a total effective sentence of five years of incarceration, of which two was a mandatory minimum, to be served concurrently with his previously imposed forty year sentence. This appeal followed.

On appeal, the defendant's sole claim is that the court abused its discretion in denying his self-represented[3]

---

[3]Although defense counsel did not adopt the defendant's motion, and Connecticut does not recognize a right to hybrid representation; see, e.g., *State* v. *Christopher R.*, 222 Conn. App. 763, 779, 306 A.3d 1117 (2023), cert. denied, 348 Conn. 946, 308 A.3d 34 (2024); the

motion to withdraw his guilty plea. Specifically, the defendant argues that **(1)** his defense counsel rendered ineffective assistance by suggesting that he plead guilty without first receiving full discovery from the state, and **(2)** the state violated *Brady* by not disclosing certain exculpatory evidence. We do not agree.

We begin by setting forth the following standard of review and relevant legal principles. "Practice Book § 39-26 provides in relevant part: A defendant may withdraw his or her plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in [Practice Book §] 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed.

"[O]ur standard of review is abuse of discretion for decisions on motions to withdraw guilty pleas brought under Practice Book § 39-27. . . . [Section 39-27] specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered.[4] [O]nce entered,

court nevertheless heard the defendant on his motion to withdraw his guilty plea, and neither the prosecutor nor defense counsel objected to that procedure.

[4]"Practice Book § 39-27 provides: The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant." (Internal quotation marks omitted.) *State* v. *Roberts*, 227 Conn. App. 159, 170–71 n.13, 320 A.3d 989 (2024), aff'd, 354 Conn. 480,    A.3d    (2026).

a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . .

"In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Footnote in original; internal quotation marks omitted.) *State* v. *Roberts*, 227 Conn. App. 159, 170–71, 320 A.3d 989 (2024), aff'd, 354 Conn. 480, A.3d (2026).

"It is well established that [t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts [that] justify permitting him to withdraw his plea under [Practice Book § 39-27]. . . .

"We further observe that there is no language in Practice Book §§ 39-26 and 39-27 imposing an affirmative duty [on] the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea. . . . [T]he administrative need for judicial expedition and certainty is such that trial courts cannot be expected to inquire into the factual basis of a defendant's motion to withdraw his guilty plea when the defendant has presented no specific facts in support of the motion. To impose such an obligation would do violence to the reasonable administrative needs of a busy trial court, as this would, in all likelihood, provide defendants strong incentive to make vague assertions of an invalid plea in hopes of delaying their sentencing. . . .

"When the trial court does grant a hearing on a defendant's motion to withdraw a guilty plea, the requirements and formalities of the hearing are limited. . . . Indeed, a hearing may be as simple as offering the defendant the

opportunity to present his argument on his motion for withdrawal. . . . [A]n *evidentiary* hearing is rare,[5] and, outside of an evidentiary hearing, often a limited interrogation by the [c]ourt will suffice [and] [t]he defendant should be afforded [a] reasonable opportunity to present his contentions. . . .

"Thus, when conducting a plea withdrawal hearing, a trial court may provide the defendant an opportunity to present a factual basis for the motion by asking open-ended questions. . . . Furthermore, in assessing the adequacy of the trial court's consideration of a motion to withdraw a guilty plea, we do not examine the dialogue between defense counsel and the trial court . . . in isolation but, rather, evaluate it in light of other relevant factors, such as the thoroughness of the initial plea canvass. . . .

"This flexibility is an essential corollary of the trial court's authority to manage cases before it as is necessary. . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . Therefore, the trial court is not required to formalistically announce that it is conducting a plea withdrawal hearing; nor must it demarcate the hearing from other related court proceedings. It may conduct a plea withdrawal hearing as part of another court proceeding, such as a sentencing hearing. . . . When a trial court inquires into a defendant's plea withdrawal motion on the record, it is conducting a plea withdrawal hearing." (Emphasis in original; footnote added; internal quotation marks omitted.) *State* v. *LaMotte*, 210 Conn. App. 44, 60–62, 268 A.3d 162 (2022). "The standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases

---

[5]In the present case, the defendant does not claim on appeal that the court should have held an evidentiary hearing on his motion to withdraw his guilty plea.

the volume of judicial work, and delays and impairs the orderly administration of justice." **(Internal quotation marks omitted.)** *State* v. *Anthony D.*, 320 Conn. 842, 851, 134 A.3d 219 (2016).

First, the court did not abuse its discretion in rejecting the defendant's argument that he was entitled to withdraw his guilty plea under Practice Book § 39-27 (4) on the basis of ineffective assistance of counsel, which was based on his argument that defense counsel failed to investigate all exculpatory evidence prior to advising the defendant to plead guilty.[6]

"[A] claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than a direct appeal. . . . Section 39-27 of the Practice Book, however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea. A defendant must satisfy two requirements . . . to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. . . . First, he must prove that the assistance was not within the range of competence displayed by lawyers with ordinary

---

[6]The defendant also argues that "the facts as known do not sustain a guilty verdict . . . ." To the extent that the defendant intended to raise this argument as a separate claim, we conclude that the defendant has failed to brief this claim adequately and, accordingly, decline to review it. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *State* v. *Sidiropoulos*, 237 Conn. App. 262, 341 n.44, 351 A.3d 871, cert. denied, 354 Conn. 923,     A.3d     (2026). The defendant's briefing of this issue consists of only his conclusory assertion that the facts did not sustain a guilty verdict and does not contain any case citations or legal analysis in support thereof. Therefore, we decline to address this claim.

training and skill in criminal law. . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a [claim of ineffective assistance of counsel]. . . . [I]t is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *State* v. *Lameirao*, 135 Conn. App. 302, 326–27, 42 A.3d 414, cert. denied, 305 Conn. 915, 46 A.3d 171 (2012).

In the present case, the defendant does not claim that the court's plea canvass was inadequate, and, in that canvass, he acknowledged that he was satisfied with defense counsel's representation. The defendant also does not claim on appeal that the inquiry that the court made of him at the hearing on his motion to withdraw his guilty plea was inadequate. Moreover, although the defendant argues that the court stated improperly that "[y]our claim of ineffective assistance of counsel is best reserved for another forum and not this," he did not request an evidentiary hearing on his counsel's alleged ineffectiveness in failing to obtain alleged exculpatory materials. See, e.g., *State* v. *Anthony D.*, supra, 320 Conn. 860 (concluding that trial court did not abuse its discretion in denying motion to withdraw guilty plea when defendant did not request evidentiary hearing on ineffective assistance claim).

*State* v. *Anthony D.*, supra, 320 Conn. 842, is instructive to our analysis. In that case, the trial court stated: "[T]he court does not believe that there is any factual basis for [withdrawing the defendant's guilty plea]. This was the court that took the plea. . . . [If the defendant] want[s] to claim at a time after that this was ineffective [assistance] or somehow coerc[ive] [he] can have a habeas proceeding." (Internal quotation marks omitted.) Id.,

846. On appeal, the defendant claimed that he was denied the opportunity to "adequately present the factual basis for his motion to withdraw his guilty plea as a result of the trial court's statement at the sentencing hearing that if the defendant wished to claim at a time after that this was ineffective [assistance] or somehow coerc[ive] he could do so in a habeas proceeding." (Internal quotation marks omitted.) Id., 855. Our Supreme Court disagreed and stated that it "interpret[ed] the trial court's statement as an attempt to convey to the defendant that there were no facts before it that would justify the withdrawal of his plea at that time, but that he remained entitled to make a claim of ineffective assistance of counsel following the sentencing hearing." Id., 857.

Here, the court gave the defendant ample opportunity to present his arguments in support of his motion to withdraw his guilty plea before denying the motion on the basis that his plea was knowingly and voluntarily made. The court did not interrupt the defendant or stop him from completing his argument, notwithstanding the court's ultimate denial of his motion and its statement that the defendant's ineffective assistance claim was "best reserved for another forum . . . ." Cf., e.g., *State* v. *Morant*, 13 Conn. App. 378, 384–85, 536 A.2d 605 (1988) (concluding that defendant was entitled to evidentiary hearing on motion to withdraw guilty plea when trial court, by interrupting defendant, effectively precluded him from making more specific allegations of fact). In the present case, as in *Anthony D.*, the court afforded the defendant a "reasonable opportunity to satisfy his burden of presenting a factual basis in support of his motion to withdraw his guilty plea." *State* v. *Anthony D.*, supra, 320 Conn. 860.

The defendant failed to make any showing, apart from bare assertions, that, as a result of his counsel's ineffective assistance, he was prejudiced and that he would have insisted on going to trial if he had obtained complete discovery from the state. As stated previously, Practice Book § 39-26 provides in relevant part that,

after acceptance, the judicial authority shall allow the defendant to withdraw his plea upon "*proof* of one of the grounds in [Practice Book § 39-27]. . . ." (Emphasis added.) See, e.g., *State* v. *Lynch*, 193 Conn. App. 637, 660, 220 A.3d 163 (2019) (concluding that trial court did not abuse its discretion in denying defendant's motion to withdraw guilty pleas based on ineffective assistance of counsel when defendant presented inadequate factual and legal basis to support his claim and, with regard to prejudice prong, "neither defense counsel nor the defendant articulated before the trial court, much less proved, that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial"), cert. denied, 335 Conn. 914, 229 A.3d 729 (2020); *State* v. *Gay*, 108 Conn. App. 211, 219–20, 947 A.2d 428 ("[i]n the absence of any evidentiary support, the defendant's bare assertion that further investigation was pivotal to his decision to plead guilty does not establish prejudice"), cert. denied, 288 Conn. 913, 954 A.2d 186 (2008). Upon our review of the record, we cannot conclude that the court abused its discretion in denying the defendant's motion to withdraw his guilty plea on the basis that his counsel rendered ineffective assistance.

Second, we reject the defendant's argument that the court abused its discretion in denying his motion to withdraw his guilty plea on the basis that it was involuntary pursuant to Practice Book § 39-27 (2).[7] Specifically, the defendant argues that the state violated *Brady* by failing to disclose the victim's medical records, which allegedly contained a statement in which the victim indicated that he did not know who shot him, before the defendant pleaded guilty. We disagree.

"The applicable standard of review with respect to an alleged *Brady* violation is as follows. In *Brady* v. *Maryland*, supra, 373 U.S. 87, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to

[7]See footnote 4 of this opinion.

punishment, irrespective of the good faith or bad faith of the prosecution. . . . [T]he *Brady* rule applies not just to exculpatory evidence, but also to impeachment evidence . . . which, broadly defined, is evidence having the potential to alter the jury's assessment of the credibility of a significant prosecution witness. . . . In order to prove a *Brady* violation, the defendant must show: **(1)** that the prosecution suppressed evidence after a request by the defense; **(2)** that the suppressed evidence was favorable to the defense; and **(3)** that the evidence was material. . . . Thus, [i]n order to obtain relief under *Brady*, a defendant bears the heavy burden of satisfying all three prongs of the aforementioned test . . . . Whether the [defendant] was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Emmanuel C.*, 233 Conn. App. 156, 168–69, 338 A.3d 1177 (2025).

With respect to the timing of the state's disclosure of *Brady* material, "[e]vidence required to be disclosed must be disclosed at a time when it can be used." (Internal quotation marks omitted.) *State* v. *Rish*, 17 Conn. App. 447, 458, 553 A.2d 1145, cert. denied, 211 Conn. 802, 559 A.2d 1137, cert. denied, 493 U.S. 818, 110 S. Ct. 72, 107 L. Ed. 2d 38 (1989). Thus, "[n]o denial of due process occurs if *Brady* material is disclosed . . . in time for its effective use *at trial*." (Emphasis added; internal quotation marks omitted.) *State* v. *Pollitt*, 199 Conn. 399, 414, 508 A.2d 1 (1986); see also *State* v. *Emmanuel C.*, supra, 233 Conn. App. 173 ("[e]vidence . . . that is disclosed, *even if during trial*, is not considered suppressed as that term is used in *Brady*" (emphasis added; internal quotation marks omitted)). The United States Supreme Court has held that the constitution does not require preguilty plea disclosure of impeachment information, reasoning that "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary . . . ."[8] (Emphasis

---

[8]In *United States* v. *Ruiz*, 536 U.S. 622, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002).the United States Supreme Court did not address the

omitted.**) *United States* v. *Ruiz*, 536 U.S. 622, 629, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002). Relying on *Ruiz*, this court recently has similarly stated that, "[i]n the absence of a trial, *Brady* impose[s] no obligation on the state to disclose . . . alleged impeachment evidence of an agreement between the state and [a potential trial witness]." *Walcott* v. *Commissioner of Correction*, 238 Conn. App. 545, 584,     A.3d     (2026).

In the present case, the only specific evidence that the defendant claims the state failed to disclose is a statement contained in the victim's medical records in which the victim allegedly indicated that he did not know who shot him. With respect to the defendant's argument that the evidence should have been produced before he pleaded guilty, we note that, in the present case, the victim was not called to testify by the state at trial or at any pre-trial adversary proceeding at which the medical records could have been used by the defense for impeachment purposes. Moreover, although the defendant argues that the statement in the victim's medical records constituted exculpatory evidence, he presented only his unsupported assertions that, without that evidence, he would not have pleaded guilty or that he was denied the "effective use" of that evidence so as to render his guilty plea involuntary.

As the state noted in its brief to this court, the defendant also did not offer any evidence that the state possessed the records at issue and suppressed them in violation of the first prong of *Brady*, nor does the record reveal when the defendant became aware of the alleged statement in the victim's medical records. The only indication in the record regarding the victim's medical records is in the state's 2018 notice of disclosure, which

issue of whether exculpatory evidence, as opposed to impeachment evidence, must always be disclosed before a defendant enters a guilty plea. See *United States* v. *Moussaoui*, 591 F.3d 263, 286 (4th Cir. 2010). That distinction is immaterial in the present case, however, because, regardless of whether the medical records are properly characterized as exculpatory or impeachment evidence, the defendant did not offer anything more than bare assertions in support of his claim that the state suppressed those records from the defense, or that he was denied the effective use of those records at any time before he pleaded guilty.

stated that "[m]edical records of the victim or other person which the state intends to present [at] trial and which are not otherwise identified therein have been or will be subpoenaed to the clerk's office and opened upon order of a judge of the Superior Court."

Furthermore, in this case, discovery was ongoing, a fact that was known to both parties' counsel before the defendant pleaded guilty. As noted previously, on January 2, 2024, defense counsel informed the court that he was waiting for additional discovery from the state. Notwithstanding the fact that discovery was incomplete, the defendant still voluntarily entered an unconditional guilty plea. See *State* v. *Reid*, 277 Conn. 764, 789, 894 A.2d 963 (2006) ("the [c]onstitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor" (internal quotation marks omitted)). In his plea canvass, the defendant agreed with the underlying facts presented by the prosecutor and agreed that he was pleading guilty "[because] [he was] guilty . . . ." As noted previously, the defendant did not offer any evidence, apart from his bare assertions, that he was prejudiced by the state's failure to make the information available to him at an earlier time. See, e.g., *State* v. *Emmanuel C.*, supra, 233 Conn. App. 172–73 (defendant's speculative claims of prejudice were insufficient to prove that timing of disclosure of impeachment evidence prevented him from receiving fair trial).

Thus, in the present case, the defendant's *Brady* claim amounted to nothing more than conclusory assertions that the prosecution suppressed the alleged *Brady* material after a request by the defense. See, e.g., *State* v. *Lynch*, supra, 193 Conn. App. 660 (concluding that trial court did not abuse its discretion in denying defendant's motion to withdraw guilty pleas when "all the court had before it was the bare assertions that defense

counsel made at the beginning of the sentencing hearing"). Accordingly, the defendant has failed to satisfy his burden of proving that his guilty plea was made involuntarily pursuant to Practice Book § 39-27 (2).

For the foregoing reasons, we conclude that the court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.

The judgment is affirmed.

In this opinion the other judges concurred.